CYRUS W. LODER, Respondent, *v.* WILLIAM M. WHELPLEY et al., Appellants.

Where the probate of a will is contested, legatees under it are not competent witnesses for the proponent as to personal transactions or communications between them and the testator. (Code of Civil Pro. § 829.)

Where a legatee, however, has executed a valid release of all his interest the disability is removed, and he may properly be examined as a witness.

An executor and proponent of a will is not disqualified from testifying to such transactions or communications.

The provision of the Code of Civil Procedure (§ 834), prohibiting a physician or surgeon from disclosing " any information which he acquired in attending a patient in a professional capacity," etc., applies to proceedings for the probate of a will, and after the death of the patient the prohibition cannot be waived by anyone.

The fact, therefore, that a physician is called as a witness by an executor and proponent of a will, does not render him competent to disclose any information acquired while attending upon the testator.

An attorney, in receiving the directions or instructions of one intending to make a will, although he asks no questions and gives no advice, but simply reduces to writing the directions given to him, still acts in a professional capacity and is prohibited from disclosing any communication so made to him by his client. (Code of Civil Pro. § 835.)

Where, however, testimony so prohibited has been improperly received by the surrogate, it is not a sufficient ground for a reversal of his decree " unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby," (Code of Civil Pro. § 2545) ; *i. e.*, to authorize a reversal it must appear that without the improper evidence the respondent would not have succeeded.

At the close of the evidence before the surrogate in proceedings for the probate of a will, the contestants moved to strike out certain testimony claimed to be incompetent, the surrogate stated that the motion was substantially disposed of by the opinion in the case. *Held*, that, as the opinion was thus incorporated into the decision, and as, in the opinion, the surrogate stated his conclusion to be to disregard such evidence, this was substantially granting the motion.

(Argued October 1, 1888; decided November 27, 1888.)

APPEALS from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an ordered made February 10, 1886, which affirmed a decree of the surrogate of Westchester county for the probate of a paper purporting to be the will of Eva J. Banks, deceased.

The proceedings were instituted upon the petition of Cyrus W. Loder, one of the executors named in the will; this was dated May 15, 1877.

Objections were made by Benjamin G. Hitchings, claiming as legatee and executor under a will, dated in 1874, and by William H. Whelpley and Louisa M. Craft, as next of kin of the testatrix, in substance: (1.) That the testatrix had no mental capacity to make the will in question; (2) that she was induced to make it by fraud and undue influence; (3) that it was not executed in due form. The surrogate found in favor of the proponent upon all points, and admitted the will to probate. All the contestants appealed to the Supreme Court and to this court.

The facts material to the questions discussed are stated in the opinion.

*Benjamin G. Hitchings* for appellants. The testimony of the doctors, Mixell, Sands and Griswold, was inadmissible under sections 834 and 836 of the Code, and the objections cannot be waived. (*Edington* v. *Mut. Life Ins. Co.*, 67 N. Y. 185; *Same* v. *Ætna Life Ins. Co.*, 77 id. 564; *Grattan, Ex.*, v. *Met. Life Ins. Co.*, 80 id. 281; *Bacon* v. *Frisbie*, Id. 394; *Root* v. *Wright*, 84 id. 72; *Dilleber* v. *Home Life Ins. Co.*, 87 id. 79; *Westover* v. *Ætna Ins. Co.*, 99 id. 56; *In re Smith*, 95 id. 51; *Renihan* v. *Denier*, 103 id. 573; *Holcomb* v. *Holcomb*, 95 id. 316.) Section 829 of the Code applies to proceedings in Surrogates' Courts. (*Tilton* v. *Ormsby*, 10 Hun, 71; 70 N. Y. 609; 48 Barb. 417; 23 Hun, 139; *In re Smith*, 95 N. Y 516.) The proponent of the will of 1874, as well as the next of kin, had a right to object to the testimony. (*In re Smith*, 95 N. Y. 516.) Henry D. Loder being an executor and legatee under the will, and, therefore, interested in the event, his testimony was clearly inadmissible. (*In re Wilson*, 103 N. Y. 374; *Children's Aid Society* v. *Loveridge*, 70 id. 387; 2 R. S. 65, § 50; Redf. 109, 110, 208.) The release was void for want of a proper party as releasee, as in every deed there must be a person *in esse*, capable of taking

to whom the release must run. (Jacob's Law Dict., Tit. Deed and Release; Bouvier's Law Dict., Deed and Release; 3 Cruise's Dig. 14; Sheppard's Touchstone, 229, 236, 323.) A mere possibility cannot be released, (2 R. S. pt. 2, tit. 2, art. 1, § 16; *Humbert* v. *Winston*, 22 Hun, 425; *In re Flandreau*, 28 id. 282.) The evidence of Henry D. Loder, as to communications of the testatrix to him in the course of his employment as her attorney and counsel, was inadmissible. (Code, §§ 835, 836; *Root* v. *Wright*, 84 N. Y. 72; 1 Bliss Code, 714; *Genet* v. *Ketchum*, 62 N. Y. 626; 95 id. 516; *Hoyt* v. *Jackson*, 3 Dem. 338, 324; 14 Johns. 391; 4 Wend. 558; *Renihan* v. *Denier*, 103 N. Y. 573; *Holcomb* v. *Holcomb*, 95 id. 316; *Westover* v. *Ætna Ins. Co.*, 99 id. 56.) The testimony of Cyrus W. Loder, the proponent of the will of 1877, as to conversations between him and the deceased testatrix, offered and admitted in support of the will propounded by him, were inadmissible under section 829. (*In re Burke*, 4 Sandf. Ch. 617; *Wilkes* v. *Rogers*, 6 Johns. Ch. 526 ; *Poucher* v. *Scott*, 33 Hun, 233 ; 98 N. Y. 424.)

*John Frankenheimer* for appellants. It was error to admit the testimony of the attending physicians. (*Renihan* v. *Dennin*, 103 N. Y. 573; *Westover* v. *Ætna Ins. Co.*, 99 id. 56; *Heuston* v. *Timpson*, 17 N. E. Rep. [Ind.] 261; *In re Smith*, 95 N. Y. 516; *Holcomb* v. *Holcomb*, Id. 316.) The prohibition against communications from a client to an attorney is not confined to communications made in contemplation, or in the progress of an action, but applies to those made in reference to any matter which is the proper subject of professional employment. (*Root* v. *Wright*, 84 N. Y. 72; *Bacon* v. *Frisbie*, 80 id. 394; *Pearsall* v. *Elmer*, 5 Redf. 181.) The prohibition extends to papers, and applies to the memorandum of will and letters received by Henry D. Loder from deceased. (*Genet* v. *Ketchum*, 62 N. Y. 626; *Pearsall* v. *Elmer*, 5 Redf. 181.) The testimony of Cyrus W. Loder, the proponent of the will of 1887, as to conversations and transactions with the deceased, offered and admitted in support of the will

propounded by him, was inadmissible under section 839, as he was testifying in his own behalf. (*Mattoon* v. *Young*, 45 N. Y. 696; *Van Tuyl* v. *Van Tuyl*, 57 Barb. 235; *Timon* v. *Claffy*, 45 id. 438; *Conroy* v. *Claffy*, 41 N. Y. 619; *Poucher* v. *Scott*, 33 Hun, 223; 98 N. Y. 422; *Wilkin* v. *English*, 24 Hun, 32; *Steele* v. *Ward*, 30 id. 555; *Holcomb* v. *Holcomb*, 95 N. Y. 316, 325; *Garvey* v. *Owens*, 37 Hun, 498, 503; *Corning* v. *Walker*, 100 N. Y. 549; 28 Hun, 435; *Church* v. *Howard*, 79 N. Y. 415; *Hill* v. *Alford*, 19 Hun, 77; *In re Wilson*, 103 N. Y. 374.) Henry D. Loder, as a legatee named in the will, is clearly a person interested in the event, and, as such, his testimony is incompetent. (*Snyder* v. *Sherman*, 23 Hun, 139.) The subsequent release or assignment did not make him a competent witness, because it was executed merely for the purpose of enabling him to testify. (*Mattoon* v. *Young*, 45 N. Y. 696, 701; *Maganow* v. *Bell*, 13 N. W. Rep. 277; *Sherwood* v. *Judd*, 3 Bradf. 267.) The release or assignment did not divest ʼHenry Loder of this beneficial interest, because, until probate, there is no one to whom the legacy can be released. (*Jackson* v. *Fountain*, 2 Johns. 170; Bouvier Law Dict., tit. Release; *Topham* v. *Tallier*, 2 Ld. Raymond, 786; 2 Salk. 575; *Mattoon* v. *Young*, 45 N. Y. 696; *Lyons* v. *Snyder*, 61 Barb. 172; *Smith* v. *Cross*, 90 N. Y. 546.) The contestants in probate proceedings are entitled to the benefits of section 829 of the Code. (*In re Smith*, 95 N. Y. 516; *Cadmus* v. *Oakley*, 3 Dem. 324.) If testimony comes within the reason of the law, this is sufficient to exclude it. (*Mattoon* v. *Young*, 45 N. Y. 696; *Van Tuyl* v. *Van Tuyl*, 57 Barb. 235; *Timon* v. *Claffy*, 45 id. 438; *Conroy* v. *Claffy*, 41 N. Y. 619.) If the testimony of Cyrus W. Loder and Henry D. Loder is inadmissible, under section 829, as to personal transactions or communications with the deceased, then it was error to admit it. (*Holcomb* v. *Holcomb*, 95 N. Y. 316; *In re Smith*, Id. 516; *Lane* v. *Lane*, Id. 494; *Kraushaar* v. *Meyer*, 72 id. 602; *Lee* v. *Dill*, 39 Barb. 516; *Brague* v. *Lord*, 67 N. Y. 495; *Garvey* v. *Owens*, 37 Hun, 498; *Ressigue* v. *Mason*, 58 Barb. 89; *Denman* v. *Jayne*, 3 Hun, 614; *Snyder*

v. *Sherman*, 23 id. 139; *Schoonmaker* v. *Woolford*, 20 id. 166; *Schufelt* v. *Watrous*, 16 Week. Dig. 195; *Van Gelder* v. *Van Gelder*, 81 N. Y. 625; *Waver* v. *Waver*, 15 Hun, 277; *Mulqueen* v. *Duffy*, 6 id. 299; *Haughey* v. *Wright*, 12 id. 179.) Beneficiaries under a will cannot testify as to personal transactions or communications with the deceased. (*Snyder* v. *Sherman*, 23 Hun, 239; *Lee* v. *Dill*, 39 Barb. 516; 41 N. Y. 619; *Brague* v. *Lord*, 67 id. 495.) The uncorroborated testimony of interested parties is not such clear, affirmative, coercive evidence as will rebut the presumption against the validity of the will in question. (*Fulton* v. *Andrews*, L. R., 7 H. of L. 448 [1875]; *Hegarty* v. *King*, 5 L. R. [Irish], 249; 7 id. 18 [1880]; *Wilson* v. *Moran*, 3 Bradf. 172; *Crispel* v. *Dubois*, 4 Barb. 393, 398; *Laycraft* v. *Simmons*, 3 Bradf. 35; *Booth* v. *Kitchen*, 3 Redf. 52; *Children's Aid Soc.* v. *Loveridge*, 70 N. Y. 387; *Marx* v. *McGlynn*, 88 id. 357; *Kinne* v. *Johnston*, 60 Barb. 69; *Dickie* v. *Van Vleck*, 5 Redf. 284; *Barry* v. *Butlin*, 2 Moore P. C. C. 480; *Paske* v. *Ollat*, 2 Phill. 323.)

*Frank B. Colton* for respondent. An executor propounding a will for probate is not a "party" to the proceedings within the meaning of section 829 of the Code, nor does his right to commissions render him incompetent by reason of interest. (*In re Wilson*, 103 N. Y. 374; *Children's Aid Soc.* v. *Loveridge*, 70 id. 387; *Rugg* v. *Rugg*, 83 id. 592.) The burden of showing the testimony of the attending physicians, and of the attorney who drew the will, to be incompetent under sections 834 and 835 of the Code, was upon the appellants. (*People* v. *Schuyler*, 106 N. Y. 298; *Eddington* v. *Ætna Life Ins. Co.*, 77 id. 571.) Even were the will harsh, capricious and unjust, that fact would raise no presumption against its validity or the capacity of testatrix. (*Gardner* v. *Gardner*, 34 N. Y. 162; *Brick* v. *Brick*, 66 id. 155; *Cudney* v. *Cudney*, 68 id. 150.) No presumption of fraud or undue influence arises from the relations which existed between Henry D. Loder and testatrix previous

to her death, nor from the fact that he drafted and superintended the execution of the will. (*Barry* v. *Butlin*, 1 Curtis Ec. Rep. 637; *Coffin* v. *Coffin*, 23 N. Y. 9; *Tyler* v. *Gardner*, 35 id. 559; *Cudney* v. *Cudney*, 68 id. 148; *Post* v. *Mason*, 91 id. 539; *In·re Smith*, 95 id., 523; *In re Darrow*, id. 668; *In re Martin* 98 id. 193; Jarman on Wills [5th Am. ed.] 67.)

DANFORTH, J. The testatrix, as the appellants concede, was a person " of education and capacity, and up to 1871 carefully managed all her own affairs," and one of the contestants put forward for probate, and, therefore, as an act of a competent testatrix, a will executed by her in 1874. The surrogate found her to be of sufficient capacity, and not under restraint or undue influence at the time of the execution of the will of 1877, and admitted it to probate. His findings are not without evidence in their support, and if certain testimony, objected to by the contestants, was properly received, or may be disregarded without affecting the result, those findings are conclusive and a sufficient answer to such requests of the contestants as were material.

Objection is made that the testimony of (1) Henrietta Babbit, Eliza J. Babbitt and Isaac M. Babbitt, legatees under the will, (2), the testimony of Henry L. Loder, legatee and executor, and (3), that of Cyrus W. Loder, proponent of the will, was all inadmissible under section 829 of the Code, and that the testimony of Mixsell, Sands and Griswold was inadmissible under sections 834 and 836 of the Code, because they were physicians, and that of Henry D. Loder, because he was also the testatrix's attorney and counsel, and so disqualified under the same sections.

*First.* The testimony of the legatees, so far as it related to communications with the testatrix or transactions with her, was inadmissible because excluded by the Code (§ 829), and so the surrogate held. At the close of the evidence the contestants moved to strike out such portions of the testimony of these and other witnesses as were claimed to be incompetent under

the various provisions of the Code (§§ 829, 834, 835), (and which had been objected to) and the surrogate said the motion was substantially disposed of by the opinion in the case; thus incorporating the opinion into the decision, and turning to it, we find that after declaring that the question lay at the threshold of the case and had been elaborately presented by counsel, he says he has " endeavored to deduce such rule " for his guidance " as the authorities cited seem to warrant," and states his conclusion " to disregard so much of the testimony of the legatees as is covered by the objection to a narration by them of communications or transactions with the deceased." Moreover, the evidence of these parties was addressed to points fully established by other evidence, and it is clear not only that it did not harm the contestants, but that when stricken out its absence could not in any proper view have affected the result.

*Second.* The testimony of Henry D. Loder. He is executor and legatee under the will, and, as such, his testimony was subject to the objection warranted by the same section (§ 829). But he released all his interest as legatee by an instrument in due form and valid, and by that release became subject to examination as a witness. (*In the Matter of Wilson*, 103 N. Y. 374.)

*Third.* The testimony of Cyrus W. Loder was of the kind referred to in section 829. He was, as executor, the proponent of the will. The appellants' claim is that he is, therefore, a party to the proceedings, and so disqualified. This relation was under consideration in *Children's Aid Society* v. *Loveridge* (70 N. Y. 387), and it was held to constitute no obstacle to a proponent giving evidence of personal transactions with the deceased person. This decision was followed in other cases and cited with approval in *Matter of Wilson (supra)*. Those decisions make discussion upon the point unnecessary.

*Fourth.* The testimony of Drs. Griswold, Mixsell and Sands. The first was physician to the testatrix from 1867 to the fall of 1875; the second was first called to her September 9, 1876; the third in 1880. Each physician was asked by

proponent's counsel, questions as to her health while under his observation, and in each case the contestants objected, on the ground that under the statute (§ 834 of the Code), information obtained by a physician was privileged, and not to be disclosed. The surrogate said he would take the testimony of both sides upon the subject and announce his decision subsequently.

Afterwards the contestants called Dr. Schmidt, who was her physician from October, 1880, until her death in January, 1882, and he testified concerning her mental and bodily condition. At the close a motion was made by counsel for the contestants to strike out such portions of the testimony of the physicians called by the proponent as were, in their opinion, excluded by the statute, but the motion was denied, as we learn from the opinion already referred to, upon the ground that the prohibitions of the Code did not apply to proceedings for the probate of a will, but if they did, that only the representative of the patient could object; that the executor named in the will was such representative, and that the objection was not only not made by him, but that he, by calling the witnesses, expressly waived the privilege of the statute. That this view is untenable, and the exception well taken, is settled by *Westover* v. *Ins. Co.* (99 N. Y. 56), and *Renihan* v. *Dennin* (103 id. 573). These cases, it is proper to say, were decided after the decision of the surrogate, and the views expressed by him were sustained by no inconsiderable amount of reason and logic, and by several cases in other courts. But in the *Westover Case* (*supra*), we held that after the patient's death no one could waive the privilege, and in the other (*supra*), that the statute did apply to probate proceedings. It follows that the exception is before us for review (Code of Procedure, § 2545), but by the same section it is expressly declared that the decree of a surrogate shall not be reversed "for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby." Under the practice, as it prevailed before this legislative prohibition, if the necessary

facts were established by unobjectionable evidence, it was held to be immaterial that incompetent witnesses also testified to the same matter (*Schenck* v. *Dart*, 22 N. Y. 420), and the erroneous admission of evidence was no ground for reversal, if the facts were established by legal evidence. (*Gardiner* v. *Gardiner*, 34 N. Y. 164; *Clapp* v. *Fullerton*, id. 190.) In obedience to the section cited (*supra*), we have since held, that an appeal must fail unless it is apparent that without the improper evidence the respondent had not succeeded. (*In re Will of Ross*, 87 N. Y. 514; *Snyder* v. *Sherman*, 88 id. 656.) When that does appear the appellant brings the case within the statute (*In re Smith*, 95 N. Y. 516), but if the judgment is clearly right, notwithstanding the error, it is no ground for reversal.

So far as the physicians are concerned, the most that can be said is, that they fail to show any derangement, actual or suspected, in the mind of the testatrix. They were called at various times to treat her for bodily ailments, and the information obtained for that purpose, or during those interviews, might be wholly stricken out without impairing or, in any degree, diminishing the weight of evidence which was before the surrogate. Griswold visited the testatrix "periodically" from 1867 to 1875; at no time treated her for other than gastric trouble, and if any possible importance could be attached to his evidence, it would be because of the extended cross-examination of the contestant's counsel, who availed himself of the opportunity to inquire minutely into all the facts known to the physician, whether developed on the direct examination or not. But the point of inquiry upon the issue was as to the condition of the testatrix in May, 1877, the time of the execution of the will. It does not appear that at that time or for nearly two years previous this witness had seen the testatrix, or ministered to her. If the effect of his testimony was to show that she was sane up to 1875, it was nothing more than the law presumed, for the law presumes every man and every woman to have the use of reason and understanding until the contrary is proved. Mixsell was first called to her in Septem-

ber, 1876, and the last time in 1877. He treated her for malaria, nothing else; his professional visits were not·numerous; his non-professional and friendly interviews were very numerous — he visited at the house where she was staying; was there at meal times at the table with her very often; about one hundred times; narrates visits which were not of a professional kind; characterizes her memory and her mental condition as displayed on those occasions. Sands began his visits in 1880, and saw her but two or three times; also for malaria; "saw right through her case, treated her for it, and the next day she was well." He did not look for any other disease and nothing called his attention to the condition of her mind.

If his testimony was inadmissible, it was unimportant and clearly not prejudicial to the exceptants. Neither was that of the other physicians, and it would be in disparagement rather than in aid of justice to give any weight to the exception.

*Fifth.* The evidence of Henry D. Loder, as to communications made to him by the testatrix, in the course of his professional employment: The Code (§ 835), provides that "an attorney or counselor-at-law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment." The surrogate received the evidence upon the grounds stated above, in regard to the testimony of the physicians. It follows that if the evidence received is of the character described in the statute, there was error in his ruling. The witness, upon the employment of the testatrix, drew and superintended the execution of the will. He drew the will from a memorandum prepared by her and addressed to him. While he was under examination it was offered in evidence, but objected to and received by the surrogate. A lawyer, in receiving the directions or instructions of one intending to make a will, is confided in by reason of his professional character as a counselor, and he acts in that capacity, although asking no questions and without advising, he does nothing more than to reduce those directions to writing. The relation, therefore, between the testatrix and the witness was that of client and

attorney.  Under what circumstances, then, and to what end did he testify?

The proof of the execution of the will was complete and perfect, it was followed by á cross-examination, at great length, by two counsel, representing different contestants, serving only to confirm and strengthen, by a variety of repetitions, the facts related by the subscribing witnesses.  The testatrix was shown to be of perfect mind and memory, to have executed the instrument in the presence of her friends and neighbors, they signing, as witnesses, at her request, she at the same time declaring the paper to be her last will and testament, and after they had signed "she said," as they testify, she was "sorry to trouble us, but it was something we all had to do for each other, and thanked us for doing it for her."  The will was then received in evidence, and it is not objected by either contestant that in this there was any error.

The contestants then went into evidence, and this evidence we have examined, not for the purpose of passing upon the question of fact disposed of by the surrogate, but to see whether it presented a case which made the exceptions under review material in any aspect.  It fails to do so.  Upon the question of mental competency, on the part of the testatrix, it would, even if wholly uncontradicted or unopposed by other evidence, raise no doubt, nor excite suspicion even, that at the time of the execution of the will she was not sane in mind, capable of discrimination and exercising it, and altogether self-possessed.  She was advanced in years, and subsequently indicated a wavering and uncertain mind and peculiarity of conduct, but at the time made material by the issue she was free from any derangement, or in any way beside herself.  Other evidence from the proponent on this point was unnecessary.  But the lawyer who drew the will was a beneficiary under it to the amount of $1,000, and when the proponent took the case he produced the memorandum to which I have referred.  In regard to it he testified as to, and in that connection stated, interviews with the testatrix, which

we hold to be inadmissible. The evidence was intended to repel the suggestion that the will was the result of undue influence, or in any way improperly obtained by the attorney. It was no doubt useful for that purpose, and it was put in rather by way of self-vindication and from over caution, but it was unnecessary. A person of sound mind, acting with full knowledge of her affairs, competent to understand her relations to those whom she wished to benefit, may bestow her bounty as she likes and no presumption of unfair dealing can arise, although one of the beneficiaries happens to be her attorney. Undue influence, when relied upon to defeat a testamentary disposition, must be proved, and not merely assumed to exist. (*In re Smith*, 95 N. Y. 516.) It was the duty of the contestants to prove, if they could, that the will was other than the free act of the testatrix, and until some impediment was shown, there was no need of further testimony from the proponent upon the point. It may be fairly said that none was given by the contestants. The evidence discloses a complete knowledge on the part of the testatrix of the contents of the will, a full legal capacity and the absence of restraint.

The surrogate found her competent, and upon the point now under consideration, being asked by the contestants to find, "that aside from the evidence of Loder as to conversations and communications between himself and the testatrix prior to the execution of the will, and that of Cyrus Loder as to communications subsequent thereto, there was no evidence that she had read and understood the provisions of the will, or to repel the presumption arising from the will having been drawn and its execution superintended by Loder, who is a beneficiary under it," refused so to find, and did find that the objections of the contestants to the testatrix's capacity to make a will, were unproven and unsustained. The General Term agree in this conclusion. The learned judge, reviewing the evidence, finds mental capacity and no proof of undue influence. This result is justified by testimony which leaves no doubt of its correctness, and, leaving out all the evidence objected to by the con--

testants, the same result, and that only could be reached. The contest, indeed, seems to have been without foundation, and it was disposed of by the surrogate through no error to the prejudice of the contestants, but in the only manner of which the evidence properly received would admit

The appeal, therefore, fails, and the judgment and order appealed from should be affirmed, but, under the circumstances of the case, we think it should be without costs to either party in this court.

All concur.

Judgment affirmed.