IN THE MATTER OF THE PROBATE OF A PAPER PURPORTING TO BE THE LAST WILL AND TESTAMENT OF MATTHEW SMITH, DECEASED.

*Will — proof of execution, where the intestate cannot read or write — proof of handwriting where a subscribing witness is dead — a former will must be produced before testimony can be given bearing upon its contents — statements made by a testator to the attorney and the witnesses — when admissible under Code of Civil Procedure, section 835.*

The application of the rule that, where a testator cannot read or write, there must, in addition to the usual proof, be also proof that he understood the contents of his alleged will, must vary somewhat with the circumstances of the case; and where, upon an application for the probate of a will, it is shown that its execution was supervised by an experienced attorney; that it was drawn at the request and at the house of the testator; that the attestation clause was read over by the attorney to the subscribing witnesses in the presence of the testator, and where the will is simple and just, there is enough to satisfy the judicial mind that the testator knew its contents.

Where one of the subscribing witnesses has died, the attorney may testify that the testator made his mark to the will, and this testimony, together with that of the living subscribing witness to the same effect, is sufficient proof of the testator's handwriting within sections 2618 and 2620 of the Code of Civil Procedure.

In such a case another attorney, called by the contestants, should not be allowed to testify that the deceased subscribing witness had said to him that a former will, drawn by the witness for the testator, was unjust to the testator's wife, and that he, said subscribing witness, was going down (to the testator's house) to have another will drawn, unless the former will is produced.

The attorney who draws a will may properly be allowed to state what the testator said in the presence of the subscribing witnesses, when the will was about to be executed, in respect to that will and his satisfaction with its provisions.

Such statements in regard to the will, made by the client to his attorney, being addressed equally to said attorney and to the subscribing witness, are not objectionable under section 835 of the Code of Civil Procedure.

APPEAL by John W. Crane, the proponent of, and the executor named in, the alleged will of Matthew Smith, deceased, from a decree of the Surrogate's Court of the county of Saratoga, entered in the office of said court on the 20th day of September, 1890, denying probate to said alleged will.

*J. W. Houghton*, for the proponent, appellant.

*C. H. Sturges*, for the contestants, respondents.

LEARNED, P. J.:

This is an appeal by proponent from the refusal of the surrogate to admit the will to probate. The reasons of the surrogate were, that the deceased could not read or write and the contents of the will were not made known to him. That he was of unsound mind and memory. And that the will was made under undue influence. The deceased had accumulated by industry about $600. He had a wife with whom he had lived on good terms for thirty years. He had never had any children. He had kept a hotel, patronized by workingmen, for some twenty-five years, and was himself accustomed to drink. His wife was a hard-working woman. The deceased made this will about a month before his death, and by it he gave $200 to his nephew, James Smith, and everything else to his wife; making her executrix and Judge CRANE, of Saratoga Springs, executor. He had three brothers surviving and several nephews and nieces, and he had had also a sister, who was not known to be living. The will was dated September 17, 1882. Proceedings for probate were commenced March, 1883; and after some delay the will was admitted to probate March 20, 1889. This probate was afterwards set aside on the ground of want of jurisdiction, apparently because certain infants had not lawfully appeared. In January, 1890, the present proceedings were commenced by the executor. The will is witnessed by James M. Andrews and Hiram H. Martin, and is signed by the mark of the testator. Andrews had died before the hearing. His signature was proved.

We are unable to see sufficient evidence to establish undue influence. It was proved (assuming the testimony to be admissible) that he had previously made another will by which he gave his property to his wife for life. But this change of testamentary disposition is not enough evidence of undue influence; and we find little else. Nor do we think that the evidence sustains the finding that the deceased was of unsound mind and memory. It is plain that he was accustomed to drink too much spirituous liquor and that he showed the effects of this habit. But an examination of the evidence does not show that unsoundness of mind which disqualifies one from making his will. We do not think it necessary to go over the details of the evidence, since there are some other points which we must examine.

The contestants urge that as the deceased could not read or write there was not sufficient evidence that he knew the contents of the will. The facts are that the will was drawn by Judge CRANE, a lawyer of long practice, who had been for some time judge of the County Court. It was drawn at the request of deceased and at his house. Mr. Andrews, one of the witnesses, was a lawyer, a man of large business, and at the time over sixty years old, evidently acquainted with the deceased, as appears from the conversation stated by Martin. Judge CRANE and the deceased were together in the room when the two witnesses came in. Judge CRANE read aloud the attestation clause in their presence, but did not in their presence read aloud the will. The decision in *Rollwagen* v. *Rollwagen* (63 N. Y., 504) is that when a testator cannot read, write or speak, there must be not only the ordinary proof of subscription and execution, but also proof that the testator understood the contents of the will. The same rule was applied in *Matter of Bull* (20 N. Y. St. Rep., 522) to the case of a testator who was nearly blind. Now the application of this general rule must vary with the circumstances. For instance, in the Rollwagen case the testator had been paralyzed and could not utter an intelligible sound, and there were many circumstances which made it doubtful whether the will expressed his wishes.

In the present case although the testator could not read, yet he was in full possession of his faculties. His brother, not mentioned in the will, came for the witnesses. A lawyer of high character, who had held judicial position, drew the will at the request of deceased. It was drawn at the house of deceased. Judge CRANE, the lawyer who drew it, was in the room with deceased when the witnesses came and read the attestation clause, in their presence and in the presence of the testator. One of the witnesses, as we have seen, was also a lawyer of experience. Add to these circumstances the facts that the will was simple in its terms and eminently just, and there is enough to satisfy the judicial mind that the testator knew the contents of the will. A strong presumption in favor of the will arises when it has been executed under the supervision of experienced persons, familiar with the law. (*Matter of Cottrell,* 95 N. Y., 339 )

We have, then, in this case more than the mere fact of the formal

execution of the will.   We have circumstances from which any one might reasonably infer that the deceased knew the contents, as it was distinctly proved that he knew the nature of the instrument.

The contestants claim that as one of the subscribing witnesses was dead, and as the testator signed by a mark, the will could not be proved.   (Code Civil Pro., §§ 2618, 2620.)   It is enough to say that Judge CRANE, not a subscribing witness, proved that the testator made his mark.   This is sufficient proof of handwriting.   But we do not decide, as intimated in some cases, that a subscribing witness may not in such a case prove the handwriting by a mark of the testator.   It is not necessary to pass on that question.

Mr. Brackett was called as a witness by contestants.   He testified, under objection, to instructions given him, as counsel, by Smith in respect to drawing a previous will in which he was a witness.   He then testified, under objection, that Mr. Andrews, the deceased subscribing witness to the will in question, came to his office and said that the will of Mr. Smith (referring to that drawn by Mr. Brackett) was unjust to Mrs. Smith, and that he, Andrews, was going down to have another drawn.   It is quite doubtful whether this evidence was admissible.   It in no way affected the question of the execution of the will in question.   Nor was it an impeachment of a witness who had testified at the trial.   If even we assume that Andrews stood in the same position as if he had been alive and had testified, this evidence did not contradict anything he could be supposed to have said.   (*Matter of Hesdra*, 119 N. Y., 615.)

If Mr. Brackett, being a witness to the former will (*Matter of Coleman*, 111 N. Y , 227), were competent to testify to statements of deceased, still he could not properly testify as to the contents of such will until its loss was shown.

Judge CRANE was asked : "When this will had been prepared and was about to be executed by the testator, what did Matthew Smith say in the presence of James M. Andrews and H. H. Martin (the witnesses) in respect to that will and his satisfaction with its provisions ?"   This was objected to under section 835, and excluded on the ground that this was a communication in the course of professional employment.   There is no doubt that this section applies to counsel employed by a client to draw a will.   (*Loder* v. *Whelpley*, 111 N. Y., 239, and the *Coleman Case, ut supra*).   But in the latter case the

decision referred to conversations with the attorneys at the time of giving instructions to draw the will. The case here is entirely different. Judge CRANE was asked simply as to a statement made by Smith in the presence of the subscribing witnesses and Judge CRANE just before the execution of the will. It was held in *Matter of McCarthy* (55 Hun, 7), that such a statement was not within the prohibition. It was a remark addressed equally to the subscribing witnesses. It might tend to show the knowledge had by the deceased of the contents of the will. It seems to us not to come within either the words of the section or the evil intended to be prevented.

The decree of the surrogate should be reversed, and issues should be sent to the Saratoga Circuit, costs to abide final event; order and issues to be settled by LEARNED P. J.,

LANDON and MAYHAM, JJ., concurred.

Decree reversed, issues sent to circuit, costs to abide final event; issues and order to be settled by LEARNED, P. J.