Kingsley *v.* Blanchard.

New trial granted.

[ONONDAGA GENERAL TERM, April 6, 1858. *Mullin, Bacon* and *Allen,* Justices.]

———•●●———

## ESTELLA KINGSLEY and others *vs.* ORLOW D. BLANCHARD.

In proceedings before the surrogate for the probate of a will, the subscribing witnesses testified that they were called into the room where the testatrix lay, by B.; that she then signed the will, and they signed as witnesses; that B. inquired of the testatrix if it was her last will and testament. She replied, it was not. B. then said, "the last you have made," and she answered, "Yes." A., one of the witnesses, testified that there was nothing said or done by which she knew that the testatrix desired her to sign as a witness. S., the other witnesss, swore that B. asked the testatrix, after she had signed the will, "if this was her last will and testament, and if she wished those witnesses to sign it, or to witness it;" that she replied, "she did not know as she could say that it was her last will." That B. then said, "the last one you have made now," and she replied, "Yes; the last one I have made now." *Held* that if A.'s recollection was right, no request was made, by any one, that the witnesses should subscribe their names to the will as such; and that if S. was right, it was by no means certain that any such request was made. That, at all events, it was a very proper case for a jury to say whether the requirements of the statute, as to a request to the witnesses, had been complied with.

*Held, also,* that the circumstances attending the execution of the will did not supply the defect in the proof and establish a request by the testatrix to the

witnesses to sign it as such; it not satisfactorily appearing therefrom that the testatrix heard the witnesses called, or knew that witnesses were necessary, or, until they signed, for what purpose they were in the room.

Whether a, testator was a person of sound mind, within the meaning of the term as applied by the statute to testamentary dispositions of property, is a fact which must be proved, on application for probate; and the burthen of its proof rests on the party propounding the will.

Although it could not have been intended, by the legislature, that the surrogate might be satisfied with presumptive proof, yet the fact of capacity may be a fair and legitimate inference from other facts. *Per* MULLIN, J.

The weight of the presumptive evidence as to capacity may be greatly weakened, if not entirely overcome, by evidence showing the condition of the testator, at the time of the execution of the will. *Per* MULLIN, J.

If, taking all the facts of the case into consideration, the question of capacity seems to the court to be a proper one to be presented to a jury, a feigned issue will be awarded, although there is some evidence of capacity, in the case.

Where a testatrix expressly denied that the instrument was her last will, saying, merely, that it was the last she had made; *Held* that this declaration was consistent with the idea, on her part, that it was not a full and final disposition of her property—that it was not entirely satisfactory, and that she intended to alter it. And that this was not such a declaration of the instrument as her last will and testament as the statute requires.

APPEAL from the decree or order of a surrogate, admitting the will of Mrs. Cunningham to probate. The facts relative to the execution of the will, and the capacity of the testatrix, appear in the opinion.

*By the Court*, MULLIN, J. Every last will and testament must, in order to be valid, be executed and attested in the following manner:

1st. It must be subscribed by the testator, at the end of the will.

2d. Such subscription must be made by the testator in the presence of each of the subscribing witnesses, or be acknowledged by him to have been so made to each of the attesting witnesses.

3d. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

4th. There must be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator. (3 *R. S. 5th ed.* 144, § 35.)

It is the duty of the courts to see that these provisions be fairly and rigidly enforced. While all useless and unnecessary restrictions should be avoided, as to the manner of executing these important instruments, yet every person must admit the necessity of the application of such rules and restrictions as will secure to the testator entire freedom of action, and at the same time furnish evidence that he has been free, and that he fully understood that he was making a disposition of his property, and that the instrument executed by him conformed to his intentions on that subject.

The provisions, above copied from the statute, were designed to have this result, and, fairly enforced and applied, will have it. If it is permitted parties to establish wills not made in conformity to the statute, not only is great injustice done in the given case, but a pernicious precedent is established, under the cover of which the greatest wrongs upon both the living and the dead will be perpetrated.

By the attestation clause, at the end of the will, the two witnesses required by the statute have certified to the due performance of all the acts and things required by the statute. This certificate, however, is not proof of the facts so certified. Before the will can be admitted to probate, it must appear, by proof before the surrogate, that the will was duly executed. (3 *R. S. 5th ed.* 139, § 10.)

To prove the due execution of the will in question the subscribing witnesses were called and sworn. They testify in substance, that they were called into the room where the testatrix lay, by one Orlow D. Blanchard; that she then signed the will, and they signed as witnesses. That said Blanchard inquired of the testatrix

if it was her last will and testament. She replied it was not. He then said, "*the last you have made*," and she said "*Yes.*" So far the witnesses agree. Mrs. Avery says there was nothing said or done, then, by which she knew that Mrs. Cunningham desired her to sign as a witness.

Doctor Shipman, on the contrary, swears that Blanchard asked Mrs. C., after she had signed the will, if "*this was her last will and testament, and if she wished those witnesses to sign it, or to witness it;*" that she replied "*she did not know as she could say that it was her last will.*" Blanchard then said, "*the last one you have made now.*" She replied "*Yes; the last one I have made now.*"

The statute requires, in order to make valid the execution, that each witness should sign his name at the end of the will, at the request of the testator. Was this done in this case? ·

Were the witnesses, or either of them, ever requested by the testatrix to subscribe their names to the will as witnesses? If Mrs. Avery's recollection is right no such request was made by any one, in words. And if the doctor is right, it is by no means certain that any such request was made. The question put by Blanchard embraced two distinct subjects—whether it was her last will, and whether she wished the persons then present to sign it as witnesses. She finally answered, "Yes; it is the last will I have made now." The "yes" may be responsive to the whole question, or it may be to but the first branch of it. The words "the last I have made now" would seem to indicate that the first branch of the question was the one to which her attention was most particularly directed. And this is very much strengthened by the first answer to the question, denying that it was her last will. If this was the only branch of the question, intended to be answered, then no request is shown, by her, to these witnesses to sign,

Kingsley *v.* Blanchard.

and this requirement of the statute has never been complied with. If one of these witnesses had recollected and sworn to the request, and the other had forgotten it, it would be for the surrogate to say on which of the two he could rely, and his decision on that subject ought not to be disturbed. But in this case one witness swears no such request was made, and the other does not and could not swear there was; and after stating what occurred, left it for the court to say whether a request was proved. It seems to me that, anxious as we may be to give effect to last wills and testaments, we cannot uphold this will without totally disregarding the statute. At all events, it is a very proper case for a jury to say whether the requirements of the statute have been complied with.

It may be said that the circumstances attending the execution of the will supply the defect in the proof, and establish a request by the testatrix to the witnesses, to sign it as such; that a request in express terms need not be proved; that it is enough if it is shown that the testatrix knew what acts were required to be performed in order to make the will valid; and that she intended, on that occasion, to comply with such forms. These propositions may all be admitted. Yet they do not help us out of the difficulty. These persons were called into the room where the testatrix was, and if she was not in a state of stupor, she heard them called. But from her condition, as described by the doctor, there is no evidence that she heard them called. It was stated by Blanchard for what purpose he desired them to go into the room. When she was aroused, the witnesses were in the room, and she was asked whether it was her will. She answered as I have shown. Now upon these facts I am not satisfied that she knew that witnesses were necessary, or, until they signed, for what purpose they were in the room. Unless she answered the whole question put by Blanchard, there is not a particle of

evidence that the witnesses were in any manner requested to subscribe the will.

It is declared by the statute (3 *R. S. 5th ed.* 139, § 10,) that if it shall appear, upon the proof taken, that the will was duly executed ; that the testator, at the time of executing. the same, was in all respects competent to devise real estate, and not under restraint, the said will, &c., shall be recorded, &c., &c., &c.

By the first section of the same article (3 *R. S.* 138, § 1,) it is provided that all persons, except idiots, persons of unsound mind, married women and infants may devise their real estate by a last will and testament duly executed according to the provisions of said title. By § 67, 3 *R. S., 5th ed.*, 150, section 10, above cited, is made applicable to wills of real or personal estáte, or of both.

The question then is, whether this testatrix is shown to have been a person of sound mind, within the meaning of these terms when applied to testamentary dispositions of property. This fact must be proved ; and the burthen of its proof rests on the party propounding the will.

Neither of the witnesses say whether the testatrix was or was not a person of sound mind. The proof of the fact, then, must be derived from the circumstances proved before the surrogate. The facts which would go to show that she was competent are, that she gave an intelligent response to Blanchard's question, inquired for her spectacles, finding herself unable to see without them, and informing Mrs. Avery where they were, on being informed that they could not be found. To these may be added the presumption of competency, in favor of every human being. If the legislature had intended that the surrogate might be satisfied with presumptive proof, it would never have been guilty of the folly of requiring a fact to be proved which the law presumed to exist. The fact of capacity may, however, be a fair and legit-

imate inference from other facts; as, for example, if it be shown that a man is in health, converses intelligently, or performs rational acts, the inference that he is a man of sound mind may be a very legitimate one. Or, if health is not shown, but the acts and language of the person are those of a sane man, the inference of capacity is legitimate.

It cannot be claimed that from a single intelligent remark or act capacity could be presumed. The wildest maniac may, and sometimes does, utter a sensible remark, or do a sensible act. It is when the mind of such a person is required to perform a series of such acts, or utter a series of such remarks, that the incapacity is established. The most, then, that can be said in regard to this doctrine of inference or presumption, is that when a sensible act is proved to have been done, or remark made, some capacity is proved. One such act or remark does not justify the inference of capacity.

If the facts above referred to should be held presumptive of capacity, in the absence of any evidence leading to the opposite conclusion, their weight in this case is greatly weakened, if not entirely overcome, by the evidence as to the condition of the testatrix at the time of the execution of the will.

The testatrix, at her death, was fifty-six years old; had been very sick for a week, having been taken with chills, fever and dysentary, and frequent discharges of blood. The doctor had been, for two or three days, administering to her stimulants, brandy, ammonia and camphor, in order to bring up her pulse, which he was unable to do. He had administered to her as much stimulant as he thought she would bear. The will was executed about 11 o'clock in the evening, and she died about daylight the next morning. The doctor knew, early in the evening, she was dying, and had so informed Blanchard. When the witnesses were called into the room she was extremely feeble, failing rapidly. She

seemed to be perfectly at ease; lay with her eyes closed, part of the time; did not speak unless spoken to or aroused; and her hands and limbs were then cold. Is it a fair inference, from all these facts, that she was mentally competent to make a will? If she was, the witnesses should have been asked, and they should have been required to answer. The doctor was able to express an opinion, which would be entitled to weight on this question; and his silence is not without its significance.

While I am not prepared to say that there is not some evidence of capacity in the case, yet I must say that, taking all the facts of the case into consideration, it seems to me to be a proper question to be presented to a jury.

While the answer of the testatrix would seem to imply that the paper signed by her was her last will, yet even that is not wholly free from criticism. The statute requires the testator to declare that the instrument is her last will and testament. She expressly denied that it was her last will, and all she said, or would say, was, it was the last she had made.

Now this declaration is consistent with the idea on her part that it was not a full and final disposition of her property; that it was not altogether satisfactory; and that she intended to alter it. Indeed it is consistent with an entire ignorance, on her part, of the disposition of property provided for by it, other than for a present and temporary purpose. In a word, it is questionable whether she knew it to be, or intended for, her last will and testament.

For all these reasons, it is due to the parties, and the cause of truth and justice, that this question should be reviewed upon the evidence before a jury, to whom the trial of these questions more appropriately belongs.

In view of the exceedingly loose manner in which the provisions of the statute relating to the execution of the

wills have, in numereus cases, been applied, it is very gratifying to find the Court of Appeals bringing back the courts to the rigid observance and enforcement of these provisions, without which fraud and force will have free course. The death-bed is not the place for closing up the affairs of this life. The mind enfeebled by disease—disturbed by the grief of friends, by its care for those who must be left behind—agitated by the hopes and fears of the unknown and untried life beyond the grave—is not in a condition to weigh accurately the claims of children and friends on its bounty—to cast off the influence which kindness, or force or fear may have brought it under. And hence the necessity of seeing that every reasonable precaution has been used in order that the best is done which a human being, under such circumstances, can do.

I am of the opinion that the will ought not to have been admitted to probate, and that a feigned issue should be prepared; and that the question be submitted to a jury.

[ONONDAGA GENERAL TERM, October 2, 1860. *Allen, Mullin* and *Morgan,* Justices.]