Dwight, J.
The contestants, respondents in this appeal, were the committees of the person and estate, respectively, of a son and a daughter of the testatrix, her next of kin, and sole heirs at law, both of whom had been judicially declared of unsound mind, and incapable of managing their affairs. On the hearing, the proponents called as their only witness the survivor of' the two attesting witnesses, who was also the scrivener who drew the will.. He testified to its due execution and attestation; to the instructions fronn which it was drawn, given to him at the same interview; to the discussion concerning the provisions of the will, between himself and the testatrix,, which took place at the same time; and to his opinion, based upon his observation of the testatrix then made, upon her statements and conversation, and the character of the instructions given him for the drawing, of the will,, that she was not of sound mind. At the close of the evidence of this witness-the proponents rested their cáse, and the contestants moved that the proceedings be dismissed. The surrogate denied the motion at the time, but, no-further evidence being offered on either side, after a more full hearing of counsel for and against the motion', he decided that the evidence did not make a prima faoie case for the probate of the will. Thereupon the proponents-moved for a re-opening of the case, and that they might be allowed to introduce other testimony on the question of the sanity of the testatrix at the time-of the execution of the will. The motion was denied, the court stating that the proponents might make the application on affidavits and the usual notice-of motion. Accordingly a motion was made for a new trial on a notice which assigned, as grounds for the relief asked for, (1) newly-discovered evidence;. (2) that the order dismissing the petition was against evidence; (3) errors in the admission and rejection of evidence; (4) surprise. This motion was denied, and on the same day the surrogate made his findings and decision on the issue joined in the proceedings, and a few days after entered the decree-accordingly, denying probate to the will.
The decision and decree were in accordance with the evidence before the-surrogate. It was incumbent on the proponents, in the first instance, to makeprima faoie proof of the competency of the deceased to make a will. Failing to do so, probate was properly denied. Code Civil Proe. § 2623; Delafield v. Parish, 25 N. Y. 34; Harper v. Harper, 1 Thomp. & C. 355; Kingsley v. Blanchard, 66 Barb. 317; In re Freeman, 46 Hun, 467; In re Cottrell, 95 N. Y. 336. There was not only failure to make such proof in this case, but the-evidence was to the contrary. The only evidence on the subject was that of the counselor of this court who drew the will and signed it as one of the attesting witnesses. He is well known to the court as an astute and able lawyer, of discriminating mind, and large experience in judging of men and their springs of action. He testified that he did not think the deceased was of sound mind at the time of the execution of the will; that her natural affections seemed to be blunted; that she seemed to have no conception of her relations to her children, nor to comprehend that they were the natural objects of her bounty, nor that she owed any duty to them; that he thought her conduct so unnatural that she could not possibly comprehend its true import. He drew these conclusions from the conversation of the testatrix, in connection with the making of her will, which lasted from one to two hours, and which, besides indicating her mental condition, disclosed her condition in life, the-condition and circumstances of her children and descendants, the nature and value of her property, as she estimated it, and the disposition which she desired to make of it. She was a widow, of 63 years of age, with a son and a. *501 ■daughter, both insane, and having no property of their own except their interest in their father’s estate, winch consisted of some 400 acres of farming-lands. Her son had also a family of his own, consisting of a wife and minor son. Her purpose, as disclosed to the witness, was to devote her entire property, which she estimated at upwards of $200,000,—$150,000 in personal property, and real estate of the value of $50,000 or $60,000,—to the building, adornment, and maintenance of a marble tomb, for herself and her family, in the cemetery of Mount Hope, at Rochester. She declared her purpose to leave nothing to the children,—who, she said, were well enough off without it,—and her determination that neither her grandson nor his mother, the wife of her son, should ever have a cent of her money. The tomb of her imagination was to be adorned with four life-size marble statues of herself, her husband and her children, and was to contain a room, to be furnished and embellished with pictures, for the reception of her friends wrho would come to visit her. She desired the sum of $15,000 or $20,000 should be set aside to provide an income for the support of a man to take care of the tomb, and keep the reception room always in readiness and condition to receive her friends. These were the general and exhaustive provisions of the will which she outlined to her scrivener, and which, as might well be supposed, excited some surprise on his part, and a suspicion in regard to her sanity of mind. He thereupon put .many questions to her for the purpose of testing her mental condition, and made some suggestions tending to bring her to a more correct appreciation of "the character and effect of the will she proposed to make. One result of such ■discussion was some modification of the provisions of the will, such as limiting the expense of the tomb to $95,000, the trust for its care and maintenance to $8,000, and the expense of statues to $10,000; and in respect to the latter, while still insisting upon life-size statues of herself, her husband and her daughter, she left it to the discretion of her executors whether they should erect a statue to her son, William. Also, in the will as executed, she gave to her daughter some articles of household furniture, pictures, and jewelry, and to her grandson the sum of $500, to be paid to him on his coming of age. Another result of the conversation and discussion between the witness and Mrs. Eamsdell, and of the propositions made and conclusions reached by her, was the fixed impression upon his mind that she was not of sound mind, nor ■capable of making a will; and so he testified. Certainly this evidence did not make aprima facie case of competent mental capacity in the testatrix, and upon this evidence the probate of the will was properly refused.
The only remaining questions arise upon the appeal from the order of the surrogate denying the proponents’ motion for a new trial. The motion-was, necessarily, made under the provisions of subdivision 6, § 2481, Code •Civil Proc. That statute confers upon the surrogate power “to grant a new trial or a new hearing for fraud, newly-discovered evidence, clerical error, or other sufficient cause,” but it subjects that power to the express limitation that it “must be exercised only in a like case, and in the same manner as a court of record and of general jurisdiction exercises the same powers.” The statement of the grounds upon which the motion may be made is, no doubt, broad enough to include, all those specified in the notice of motion. Of these, two may be at once eliminated. The objection that the decision of the surrogate was against the evidence has already been considered, and found not tenable. The objection that there were errors in the admission and rejection of evidence seems to have no ground to stand upon. Ho evidence offered was rejected, and none of the evidence received was objected to, except in the ■single instance of the answer of the witness to the question, by counsel for the contestants, whether the conversation of the deceased was in his judgment irrational. The court ruled that the witness might state how the acts and conversation which he had described impressed him; to which ruling proponents’ counsel excepted. The ruling was strictly in accordance with *502 the well-established rule that the non-expert witness, after describing the-acts and detailing the conversation of the person whose mental condition is the subject of inquiry, may testify what conclusions he drew or impressions, he received from the acts and conversation thus described.
There was a motion by proponents, before they rested their case, to strikeout certain detached and selected portions of the testimony of their witness, on the ground that those portions of his testimony were not responsive to-the question, and as incompetent and immaterial, and an exception was taken to the denial of that motion. This exception was properly disregarded by the-surrogate on the motion for a new trial. Much of the evidence included in the motion to strike out was given by the witness on his direct examination, by counsel for the proponents. In no instance, either upon the direct or cross-examination, is the question which elicited the evidence given in this-record, so that it is impossible to say that it was not, in every instance, strictly in response to the question asked, and no objection was made to any of the questions, whatever they were. A motion to strike out, under such-circumstances, was properly denied.
There remain to be considered only two grounds of the motion for a new trial, viz., of newly-discovered evidence, and of surprise. The case is clearly not brought within the rules which govern the granting of new trials for newly-discovered evidence. The evidence propounded by the moving papers, if newly-discovered, was so only because no previous effort had been made to-discover or procure it. It was all of it, so far as appears, as easily within the-reach of the proponents before as after the trial and submission of the case. The papers show that counsel for the proponents were notified that the contestants would rely upon the absence of prima faoie proof of mental competency on the part of the testatrix, without giving any evidence on their part;, and a motion to dismiss the petition on that ground was argued and re-argued, at an interval of several days, before the decision of the surrogate-' was finally made. ISTo doubt if at any time preceding the final submission of the case the application had been made for leave to produce further evidence on the part of the proponents that application should and would have been granted. But the proponents elected to submit the case upon the evidence-already given, and the reason for so doing is frankly stated by their counsel in his affidavit read on the motion for a new trial, viz., that he “supposed-that Mr. Camp’s evidence complied with the requirements of the statute, and-was sufficient to admit the will to probate,” and that but for such belief “he-would not have rested his case without calling other witnesses. It is impossible, after this concession, to contend that a case is made for a new trial on the ground of newly-discovered evidence. Moreover, the evidence propounded by the affidavits on both sides, read on this motion, cannot be regarded as affording a reasonable probability that the result of the new'trial would be different from that of the trial already had. On the contrary, the-evidence so presented must be said to preponderate against the allegation of competent mental capacity in the testatrix to make a will. And so in two-essential particulars the case made by the proponents on this motion fails to-meet the requirements of the rule which we have been considering.
The moving parties have equally failed to make a case for a new trial on the ground of surprise. The only surprise alleged by them is surprise at the-decision of the court. The surprise which may furnish ground fora new trial-must be caused by the evidence given on the first trial. It must be either (1) surprise by evidence given by the adverse party, which the moving party could not reasonably have anticipated would be given, and which he was therefore unprepared to meet, but which he is now prepared to meet by evidence propounded by the moving papers; or (2) surprise by failure on his own part to make the proof which he had reasonably believed himself prepared to-make, and which he is now prepared to supply by evidence propounded in the- *503 same manner. In the case of surprise, as in that of newly-discovered evidence, the new proofs proposed to be made must appear to be of sufficient force and weight to render it probable that the result of the trial will be reversed. It is plain that the case in hand does not come within the rule above stated. The proponents had not been deceived in respect to the testimony to be given by the witness called by them. So far as appears, that testimony was in all respects what they expected it would be. They were content to rest their case upon it; their only disappointment was in the effect which it produced upon the mind of the court to which it was addressed. We can see no ground upon which the surrogate could have granted the motion for a new trial. The decree and order appealed from must be affirmed. All concur. Decree and order affirmed, with costs to both parties payable out of the estate.