In the Matter of the Probate of a Paper Writing Purporting to Be the Last Will and Testament of ROBERT B. SMITH, Deceased.

MARY AVERILL and Others, Contestants, Appellants; JOSEPH H. BREAZNELL, Proponent, Respondent.

Second Department, December 29, 1917.

**Will — probate — failure to prove testamentary capacity — burden of proof.**

Appeal from a decree admitting a will to probate after a trial of issues by a jury in the Surrogate's Court. The testator made the will leaving the bulk of his property to a stranger in blood when he was seventy-four years old and confined in a sanitarium where he subsequently died. Evidence examined, and *held*, that a finding that the testator had testamentary capacity was against the weight of evidence and that the decree should be reversed and a new trial ordered.

The burden of establishing testamentary capacity is upon the proponent of a will where that fact is contested. But a contestant who asserts undue influence and fraud must establish the same for they are never presumed.

APPEAL by Mary Averill and others, contestants, from a decree of the Surrogate's Court of the county of Suffolk, entered in the office of the clerk of said Surrogate's Court on the 23d day of April, 1917, and also from an order entered on the 16th day of April, 1917.

Second Department, December, 1917. [Vol. 180·

*Walter D. Clark*, for the appellants.

*Rowland Miles* [*Joseph H. Breaznell* with him on the brief], for the respondent.

JENKS, P. J.:

The decree that admitted the will to probate was made after trial of the issues by a jury in the Surrogate's Court. The jury found for the proponent upon the three issues of execution, testamentary capacity and undue influence. The main contest was over testamentary capacity. I think that the verdict was against the weight of proof upon that issue.

The testator when he made the will was 74 years old, and had been the inmate of a sanitarium for considerable time. There he died in the following year. He left no widow, and his heirs and next of kin were nephews and a niece, grandnephews and grandnieces. After bequests to the nearer class of $100 each, he left the residue — $25,000 in personalty to a stranger in blood — a friend who had no apparent claim upon the bounty of the testator. The contestants are the said relatives.

The lawyer who drew the will had been for some years the attorney for the testator, and was named as sole executor. Only the draughtsman and the two subscribing witnesses were present at execution. These three persons were called by the proponent. Of the two subscribing witnesses, one, the wife of the physician who headed the sanitarium, was not questioned as to the testamentary capacity; the other, a resident physician of the sanitarium who had the testator under professional observation almost daily from the time of his reception, expressed upon cross-examination an unqualified opinion that the testator did not have testamentary capacity at the time of the execution of the will. The contestants called the medical head of the sanitarium, who, after giving a detailed history of the patient, expressed the like opinion. A third physician, who had attended the testator prior to his stay in the sanitarium, testified as to a condition before that period which was confirmatory of this opinion of his professional brethren. The drawer of the will is a reputable attorney undeserving of any reflection. He testified that he prepared the will in the sanitarium, and that he and

the witnesses were together with the testator for five or ten minutes. He testified that the acts of the testator; what the testator said and the answers the testator made impressed him that the testator was then rational. On cross-examination he was asked: " Q. There is no real estate? Is it not a fact that when you and Dr. Chauvin and Mrs. Ross were in Mr. Smith's room at the time this paper writing was signed, Mr. Smith never said a word except I suppose so, or as you say I do? A. He said I do; that might be true. Q. That was all that he said? A. That might be that I do." Such a transaction did not afford much information as to the mental condition of the testator at that time. And this witness, who had been an occasional visitor at the sanitarium, admitted that in his opinion the condition of the testator from his illness had been such that there were times (he specified three) when the witness would not have thought it proper to prepare a will. He did testify that the physician who was a subscribing witness said to him immediately after execution that the testator was competent to make a will, but this was denied by the physician.

The medical witnesses were not those selected by either party, for they were pointed out by the surroundings of the testator. Of the two who had the testator under observation for a considerable period before the execution, we find that one was called by each party. Their relation to the case was that of impartiality, and there is nothing that indicates but that they testified to their honest belief. The proponent called a number of witnesses, but, with the exception of one or two who had visited the testator in the sanitarium, and then but rarely, they spoke of a period prior to his reception there. The testator had boarded with one of them before he was admitted to the sanitarium. But as a rule the testimony of these witnesses was confined to the casual meetings of social life or the routine of the simplest business transactions more or less remote from the time of the execution of the will.

The counsel for the appellants insists that the learned surrogate erred in his instruction as to the burden of proof. In view of the new trial, it seems pertinent to consider the rule. It is now settled that upon an issue of undue influence

the burden is upon the contestant. (*Matter of Kindberg,* 207 N. Y. 220, 228.) But I think that the rule of that case is not applicable by analogy to the issue of testamentary capacity. I think that in a will contest the burden of proof upon the whole case, as to the issue of testamentary capacity, is upon the proponent.

The right of testamentation is not inherent. The State, that confers the right, may limit it, and in this State the law specifically prescribes that the persons entitled to make a will are those of " sound mind and memory and no others." (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 15; Id. § 10.) He who asserts an exercise of the right should show that the testator possessed the prescribed statutory qualifications. In *Matter of Goodwin* (95 App. Div. 183) this court, per WILLARD BARTLETT, J., concerning the rule said: " In *Matter of Ramsdell's Will* (3 N. Y. Supp. 499) the General Term of the Fifth Department (BARKER, P. J., and HAIGHT, BRADLEY and DWIGHT, JJ.) said: ' It was incumbent on the proponents, in the first instance, to make *prima facie* proof of the competency of the deceased to make a will. Failing to do so, probate was properly denied.' " See, too, *Matter of Schreiber,* 112 App. Div. 495; appeal dismissed, 185 N. Y. 610; *Rollwagen* v. *Rollwagen,* 63 id. 504; *Kingsley* v. *Blanchard,* 66 Barb. 317; *Matter of Widmayer,* 34 Misc. Rep. 439, 440; affd., 74 App. Div. 336; *Crowninshield* v. *Crowninshield,* 2 Gray, 531; *Hall* v. *Perry,* 87 Maine, 569; *Prentis* v. *Bates,* 93 Mich. 234; Greenl. Ev. [15th ed.] § 77; Wigm. Ev. § 2500; Alexander Wills, §§ 399–404; *Barry* v. *Butlin,* 1 Curt. Ecc. 637. In *Fulton* v. *Andrew* (L. R. 7 Eng. & Irish App. 448) Lord CAIRNS, C., says for the House: " In the well-known case of *Barry* v. *Butlin,* before the Judicial Committee of the Privy Council, Mr. Baron PARKE, delivering the opinion of the Judicial Committee, said this (1): ' The rules of law, according to which cases of this nature are to be decided, do not admit of any dispute, so far as they are necessary to the determination of the present appeal, and they have been acquiesced in on both sides. These rules are two: the first, that the *onus probandi* lies in every case upon the party propounding a will, and he must satisfy the conscience of

the Court that the instrument so propounded is the last will of a free and capable testator. \* \* \* These principles, to the extent that I have stated, are well established. The former is undisputed.' " Earl HALSBURY in his Laws of England (Vol. 28, p. 533) states the rule thus: " Generally speaking, the law presumes sanity, and no evidence is required to prove the testator's sanity if not impeached. When, however, it is impeached and the whole case is before the court on evidence, the court must pronounce against the validity of the will unless the evidence on the whole is sufficient to establish affirmatively that the testator was of sound mind at the time of execution."

Some judgments of the courts have rested upon the general presumption that an individual is sane. Mr. Surrogate FOWLER has well said in *Matter of Gedney's Will* (142 N. Y. Supp. 161): " The legal presumption of sanity, while it works for the testator (*Jackson* v. *Van Dusen*, 5 Johns. 144, 159; *Sturdevant's Appeal*, 71 Conn. 392), is not what the Roman law terms ' *levamen probationis*,' or, in other words, is not sufficient in itself to absolve the proponent from the necessity of proving in the first instance that testator had testamentary capacity." *Sturdevant's Appeal* (71 Conn. 392) contains a keen analysis and limitation of the general presumption of sanity. BALDWIN, J., for the court says: " The presumption of sanity is not in itself evidence, but it may serve the purpose and supply the place of evidence in setting up something which must be overcome by proof to the contrary. *State* v. *Smith*, 65 Conn. 283, 285; *Ward* v. *Metropolitan Life Ins. Co.*, 66 id. 227, 238. That may have probative force which is not evidence. Judicial notice, for instance, has it. ' In its appropriate field, it displaces evidence, since as it stands for proof, it fulfills the object which evidence is designed to fulfill, and makes evidence unnecessary.' *State* v. *Main*, 69 Conn. 123, 136."

The learned chief judge who wrote in *Kindberg's Case* (*supra*) cites as authorities: *Tyler* v. *Gardiner* (35 N. Y. 559); *Cudney* v. *Cudney* (68 id. 148); *Matter of Martin* (98 id. 193, 196). In *Tyler* v. *Gardiner* (*supra*) the court, per PORTER, J., say (p. 594): " It is true that the burden of establishing

imposition and undue influence rests, in the first instance, upon the party by whom it is alleged. Fraud is never to be presumed from the mere concurrence of temptation and opportunity, or from the mere fact that the chief actor is also the principal beneficiary. It must be established by affirmative evidence. It is thus established, however, when facts are proved from which it results as an unavoidable inference. When such evidence is furnished, the burden of repelling the presumption, to which it leads, is cast upon the party to whom the fraud is imputed." In *Cudney* v. *Cudney* (*supra*) the court, per RAPALLO, J., say: " To invalidate a will on the ground of undue influence, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it, and so control the actions of the testator, either by importunities which he could not resist or by deception, fraud or other improper means, that the instrument is not really the will of the testator " (p. 152). In *Matter of Martin* (*supra*) the court, per DANFORTH, J., say: " The case then is one where the testatrix had testamentary capacity, a present knowledge of the contents of the will, and where at its execution she was surrounded by all the guards which the statute has prescribed to prevent fraud and imposition. A will executed under these circumstances can be avoided only by influence amounting to force or coercion, and proof that it was obtained by this coercion. The burden of proving it is on the party who makes the allegation. These principles are well settled. (*Tyler* v. *Gardiner*, 35 N. Y. 559; *Cudney* v. *Cudney*, 68 id. 148.) "

He who presents a will asserts that the testator was qualified by the statute to make it. Therefore, he asserts that the testator was of sound and disposing mind and memory. When there is proof offered to the contrary, to put the burden of the whole case upon the proponent is to place it upon him who asserts that the facts show that the act was done by one qualified under the statute. But he who asserts undue influence in effect asserts that fraud or some kindred wrong procured the testamentary expression of the will of

another than the testator. Fraud and the like are never presumed, and to put the burden of proof upon the contestant is but to place it upon him who asserts that fraud or the like was accomplished.

There is a commendable discussion of the principles by Mr. Surrogate SCHULZ in *Matter of King* (89 Misc. Rep. 638).

I advise that the decree and order of the Surrogate's Court of Suffolk county be reversed and that a new trial be ordered, costs to abide the final award thereof.

THOMAS, STAPLETON, RICH and BLACKMAR, JJ., concurred.

Decree and order of the Surrogate's Court of Suffolk county reversed and new trial ordered, costs to abide the final award of costs.