In the Matter of the Probate of the Last Will and Testament of AMELIA J. Cook, Deceased.

MADALINE M. FORMEL, Executrix, etc., and Another, Appellants; GEORGE Cook and Others, Respondents.

*Will — testamentary capacity — evidence — opinion.*

Appeal by Madaline M. Formel, proponent, named as executrix under the will of Amelia J. Cook, deceased, and another, from so much of the decree of the Surrogate's Court of the county of Saratoga, entered in said Surrogate's Court on the 5th day of November, 1917, as adjudges that the paper writing dated March 23, 1915,.is not such last will and testament of said decedent.

Decree modified by providing that the costs and disbursements allowed therein shall be paid from the estate, and as so modified affirmed, without costs. All concurred, except Woodward, J., who voted for reversal, with an opinion in which Lyon, J., concurred.

WOODWARD, J. (dissenting): On the 23d day of March, 1915, Amelia J. Cook, of the town of Saratoga Springs, executed in due form a last will and testament. This was done between the hours of eight and nine o'clock in the evening of that day, and about one o'clock in the morning of the twenty-fifth day of March she departed this life, leaving said last will and testament. She was, at the time of her death, about seventy-three years of age, and the immediate cause of her dissolution was lober pneumonia, which appears to have developed from a cold on or about the eighteenth day of March, at which time she was sent to the hospital in Saratoga Springs by her physician. The disease from that time on appears to have been progressive, though there was some evidence that she appeared somewhat better on the day that the will was executed. The attorney who drew the will was one of the witnesses to the execution of the same, and nothing appears from which the inference could be properly drawn that he was not a reputable practitioner. He testified to the due execution of the will; that he was furnished with the data for the same by Julius Z. Formel, who was given the life use of the testatrix's property, with the privilege of encroaching upon the principal, with the remainder over to the children of the said Formel. This data was furnished on the day preceding the execution of the will, and was read to the attorney by Formel from a memorandum which he had. Mr. Pierson, the attorney, testified that he had some conversation with Formel as to the witnesses, and that it was expected that some of the nurses would act, but that upon this being suggested to the superintendent of the hospital they were told that this was against the rules, whereupon Mr. Pierson invited one James J. Franco, who happened to be present visiting his sick mother, to act with him, and the will was executed with these two persons as witnesses. Both of these witnesses testify that the testatrix was at the time conscious of what she was doing, Franco taking pains to ask her if .she desired to execute the instrument, together with some other questions, to satisfy himself that he was acting properly in the

premises, and getting intelligent responses to these questions. Mr. Pierson testifies that he had a detailed conversation with the testatrix, who took the will and read it over, criticising his spelling of some of the names, and approving of it in all other respects. Both these witnesses testify that the testatrix was of disposing mind and memory at the time the will was executed, and this testimony is strongly corroborated by the fact that the will is in entire harmony with the expressed purposes of the testatrix at a time when it is not seriously questioned that she was capable of handling her own affairs. It is true that some effort was made to show that the testatrix was not of sound mind, and there was some testimony to the effect that she was of a highly romantic and imaginative temperament, and that she idealized things, even to the point of lying about matters of no consequence; but this never reached the dignity of proof of incapacity to deal with her property, and the evidence showed conclusively that she had a fixed purpose of excluding her relatives from any participation in her property. A will made by the testatrix on the 14th day of December, 1908, disposed of her entire property to charitable institutions, neighbors and friends, without any mention of her relatives, and all the witnesses who testified upon the subject agreed that the testatrix had consistently proclaimed her purpose of disposing of her property in such a manner as not to permit her relatives, and particularly her brother, to share in the estate. Other witnesses testified to her friendly relations with Formel, and of her declared intention of leaving her property to him or to his children several months before her last illness, and the instrument offered for probate is wholly consistent with her entire conduct in reference to her property. There would seem to be nothing lacking of a *prima facie* compliance with the statutory requirement of showing that the testatrix was of sound mind and memory. (*Matter of Smith*, 180 App. Div. 669, 672.) Sanity is presumed, and the testimony of the subscribing witnesses, supported by the consistency of the will with her previously declared purposes, makes a rather strong case. Of course, the burden of proof is upon the proponent to show the execution of this will by a person of sound mind and memory, but there can be no doubt that as the case stood at the close of the proponent's evidence there was evidence to support the will which would have required its probate, and the question is whether this *prima facie* case was overcome by the competent evidence to be found in the record. There is certainly no probative force in any of the evidence produced in support of the contention that the testatrix was generally of an unsound mind and memory. That the testatrix was peculiar; that she called things beautiful which did not appeal to her unimaginative relatives, may be conceded, but that she had ever shown hallucinations about her property rights, or about her purposes in connection with the devolution of the same, is not to be found in the record. All her deliberate acts, all her conversations, show that she had the purpose of excluding her relatives from the enjoyment of any part of her property; she had not spoken to her brother, nor he to her, for several years; she had stated to her physician and others that she had no use for him and that she did not want him to have her property,

and when she came to make her last will she persisted in that purpose, and left her property to the man whom she had proclaimed as her only friend, and to his children. If there is any evidence of unsoundness of mind or of memory in this it does not occur to us. She obviously had a fixed purpose, and she remembered that purpose when she executed this will, assuming that she was competent to act at the time. Both the subscribing witnesses testify that she was competent to act at the time; a friend, who called on her the day before the execution of the will, discovered no irrationality in her conduct, and her physician, who was not with her at the time, conceded that if she had the conversation which Pierson says she had with him he would not consider her incapable of making the will, but insisted on intruding his opinion that the conversation did not occur. This was, on motion of the proponent, struck out. Subsequently, however, the learned surrogate called attention to some matters appearing in the hospital chart and asked: " In your opinion was it possible for her to have held a conversation between seven and nine o'clock on that day — the conversation that has been narrated here? " And this very eager witness answered: " Absolutely not. I remember that evening in question, because it was one of the few night visits I made on her." That this testimony had its effect is shown by the fact that the learned surrogate in his opinion refers to this testimony that " it was absolutely impossible for her to have held the conversation stated to have been held by her with Pierson and others after 8 P. M." It is true there was no exception noted in the record to this testimony, but testimony of the same character had been struck out on the motion of the proponent before, and it was obviously improper to ask for or receive opinion evidence upon this point. Witnesses who are unimpeached testified to having held conversations with the deceased. They were unquestionably present and had the opportunity to hold the conversations, and to oppose to their positive testimony the opinion of a physician that such conversations could not have been held is to substitute a mere assumption in the place of proof. The fact that the question was asked by the court — and its obvious weight with the court in reaching its conclusion — shows that the error was prejudicial to the proponent, and we are of the opinion that the proponent having once raised the question, and a proper ruling having been made upon it, mere inadvertence in not objecting to a question asked by the court ought not to operate to the prejudice of the proponent. (*Thompson* v. *Manhattan R. Co.*, 11 App. Div. 182, 184; *Lyons* v. *N. Y. Elevated R. R. Co.*, 26 id. 57, 59.) As Mr. Justice Bartlett said in a dissenting opinion in the *Thompson Case* (*supra*), " Notwithstanding the absence of objection or exception, we could, nevertheless, order a new trial if we deemed the error sufficiently serious," and we are of the opinion that this should be the course pursued here. The case is, perhaps, a close one. The testatrix was an old woman and near to her death, but this does not necessarily deprive her of her right to dispose of her property as she chose. If she was of sound mind and memory the law gave her an absolute right to do with her property as she has apparently done. (*Matter of Smith, supra.*) She has conformed to all the forms

required by the statute;* the proponent of the will has made a *prima facie* case, and were it not for the intruded and improper testimony of her physician it is by no means clear that a different result would not have been reached. While it is not a case in which this court should undertake to determine the facts, we think it is one where the determination of the surrogate should be founded upon competent evidence, and that a new trial may properly be ordered. The decree of the surrogate should be reversed, and a new trial ordered, with costs to abide the event. Lyon, J., concurred.

---

* Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), § 21. — [Rep.