In re GOODWIN.

(Supreme Court, Appellate Division, Second Department.   June 10, 1904.)

1. PROBATE — TESTAMENTARY CAPACITY — SURROGATE'S FINDING—CONCLUSIVE-
NESS ON APPEAL.
    Under Code Civ. Proc. § 2623, providing that if it appears to the sur-
rogate that a will is duly executed, that the testator was at the time
competent to make a will, and not under restraint, it must be admitted
to probate, the determination of the surrogate that a testator was com-
petent to make a will is not binding on the court on appeal, but the phrase
"if it appears" is equivalent to a requirement that the fact of competency
must be established by sufficient evidence.

2. SAME—EVIDENCE—SUFFICIENCY.
    In a proceeding to probate a will under Code Civ. Proc. § 2623, evidence
considered, and *held* insufficient to support the surrogate's conclusion that
testatrix had testamentary capacity at the time she made the will.

Appeal from Surrogate's Court, Westchester County.

Proceedings for the probate of a paper propounded as the last
will of Addraetta Goodwin, deceased.   From a decree admitting the
will to probate, Eben Goodwin and others appeal.   Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS,
WOODWARD, and HOOKER, JJ.

William H. Hamilton (Charles H. Beckett, on the brief), for appel-
lants.

Richard L. Hand, for respondents John W. Alexander and Charles
A. Miles.

Charles F. Wheaton, special guardian for respondent William H.
Goodwin.

S. H. Thayer, for respondent Anne Winant.

WILLARD BARTLETT, J.   Section 2623 of the Code of Civil
Procedure, relative to the sufficiency of the proof of an instrument
propounded for probate, provides as follows:

"If it appears to the surrogate that the will was duly executed; and that
the testator, at the time of executing it, was in all respects competent to make
a will, and not under restraint; it must be admitted to probate, as a will
valid to pass real property, or personal property, or both, as the surrogate de-
termines, and the petition and citation require, and must be recorded accord-
ingly."

The contention of the contestants and appellants in the present
case is that the evidence offered in support of the paper propounded
as the will of Addraetta Goodwin is not sufficient to establish the
competency of the testatrix.   The suggestion was made in behalf of
the proponents upon the argument that the requirements of section
2623 had been complied with, and therefore this court could not in-
terfere, because it did appear to the learned surrogate that the tes-
tatrix at the time of executing the paper was in all respects com-
petent to make a will.   The phrase "If it appears," at the beginning
of the section, however, is equivalent to a requirement that the fact
of competency must be established by sufficient evidence; and, un-
less this requirement is complied with, probate should be denied.

In the Matter of Ramsdell's Will (Sup. Ct.) 3 N. Y. Supp. 499, the General Term of the Fifth Department (Barker, P. J., and Haight, Bradley, and Dwight, JJ.), said:

"It was incumbent on the proponents, in the first instance, to make prima facie proof of the competency of the deceased to make a will. Failing to do so, probate was properly denied. There was not only failure to make such proof in this case, but the evidence was to the contrary."

It seems to me equally true in the case at bar that there was not only failure to make prima facie proof of the competency of the testatrix to make a will, but that all the proof on that subject tended to a contrary conclusion. The will in question was executed at the city of Yonkers on the 5th day of October, 1903, between 7 and 8 o'clock in the evening. The testatrix was at the time confined to her bed by an illness which proved fatal 10 days later. She was too feeble to sign her name, and signed the paper by making her mark. Five persons were present: Mary S. Alexander, Frances R. Jones,. and Louisa B. Nelson, who subscribed their names to the will as witnesses; Dr. Charles A. Miles, the physician in attendance on the testatrix, and John W. Alexander, the lawyer by whom the will appears to have been prepared, and who is the father of Mary S. Alexander. Only two of the five persons present were called to testify as to the circumstances under which the will was executed—Mary S. Alexander and Frances R. Jones. Miss Alexander did not say a word in reference to the competency of Mrs. Goodwin. She testified that an earlier will had been signed by the testatrix, about 4 o'clock in the afternoon of the same day, to which she and Miss Jones had been witnesses; that in the evening the paper now propounded was in the sickroom; and that Mr. Alexander, the father of the witness, said that Mrs. Goodwin's signature on the will which was signed in the afternoon was so illegible that he thought it best to have her sign by mark, and he had made a copy of the will and brought it with him, and he then asked Mrs. Goodwin to sign by mark, saying to her, "It is an exact copy, Mrs. Goodwin, of the will made this afternoon." Mrs. Goodwin then signed the will, the witness standing beside her and holding the pen. Miss Alexander further testified that she then asked Mrs. Goodwin if she declared that to be her last will and testament, and if she requested Mrs. Nelson, Miss Jones, and herself to act as witnesses, and that she said "Yes," and they then all signed in her presence and in the presence of each other. The statement of Mr. Alexander that the propounded paper was a copy of the will previously signed is not shown to be the fact, nor does it appear from any evidence in the case that either will had ever been read to or by the testatrix, or that she had any actual knowledge of the contents of either paper. Miss Frances R. Jones, the other witness to the will, who was examined orally in behalf of the proponent, says that Mrs. Goodwin's response to Miss Alexander was neither "Yes" nor "No," but merely a mumble, and that she could not say whether it was expressive of assent or dissent. Miss Jones was a trained nurse in charge of the sick woman, having been in attendance from the 29th of September, 1903, and remaining until the death of the testatrix. She testified that in her opinion Mrs. Goodwin was

not of sound mind and memory on the 5th day of October when the mark was made by her upon the propounded paper. She explained this statement by saying that she meant that Mrs. Goodwin was under the influence of bromide, and was so far under the influence of drugs that she had not control of her mind. "At times," said the witness, "she would have possession of her mental faculties, and then almost immediately it was gone." She also describes the testatrix as being much of the time in a drowsy condition. "These drowsy states," she says, "were something that occurred most of the time. She lay in that state most of the time. When she was in that condition it was necessary to arouse her to get her attention before she would understand and act." She also stated that two nights before the will was made, and the night after the will was made, the testatrix was delirious and talked at random. The physical condition of Mrs. Goodwin at the very time of the execution of the instrument was such that she was unable to control the exercise of her bodily functions, and Miss Jones called the attention of Dr. Miles, just before she signed her name as witness to the will, to the fact that the bed was wet with the urine of the patient involuntarily discharged. I have not undertaken to state all the evidence in the case bearing upon the question of the competency of this lady to make a will, but, considering it all together, I cannot resist the conclusion that its tendency is to establish her incompetency rather than the reverse. It is true there is no proof as to the quantity of bromide administered to the patient, or as to what quantity is necessary to produce a given effect upon the mental condition of a person to whom that drug is administered. Nevertheless, such proof as there is on the subject is the testimony of a qualified trained nurse, expressive of her opinion as an expert that a sufficient quantity of bromide had been taken by Mrs. Goodwin to deprive her of sound mind and memory, and as against this there is nothing. If the conclusion of the witness was incorrect in this respect, it would have been easy to controvert it, and yet three persons who saw the patient and could have testified as to her condition were not called as witnesses.

I think that the appellants are entitled to a reversal of the decree, under section 2588 of the Code of Civil Procedure, and to an order directing the trial by a jury of the question of the competency of the testatrix.

Decree of the Surrogate's Court of Westchester county reversed, and proceeding remitted for trial before a jury on the question of the competency of the testatrix. All concur; HIRSCHBERG, P. J., in result.