(137 App. Div. 103.)

## In re RICHARDSON'S WILL.

(Supreme Court, Appellate Division, Second Department. March 31, 1910.)

1. WILLS (§ 391*)—PROBATE PROCEEDINGS—TRIAL BY JURY—REVERSAL FOR.

    Where the correctness of the surrogate's refusal to admit a will to probate is not free from doubt and entirely satisfactory to the appellate court on the conflicting evidence as to restraint, undue influence, and mental capacity, the issues will be ordered submitted to a jury on a new trial after remand.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 863; Dec. Dig. § 391.*]

2. WILLS (§ 166*)—UNDUE INFLUENCE.

    Though undue influence is not readily susceptible of direct proof, yet there must be at least affirmative evidence of facts from which it may be inferred.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

3. WILLS (§ 163*)—UNDUE INFLUENCE—BURDEN OF PROOF.

    The burden of showing undue influence in procuring the execution of a will is on the contestants of the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig. § 163.*]

Appeal from Surrogate's Court, Westchester County.

Proceedings for the probate of the will of Charles C. Richardson. From a decree refusing probate, the contestants appeal. Reversed, and new trial by jury ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and CARR, JJ.

John Brennan, for appellants.
Henry C. Henderson, for respondent.

JENKS, J. This appeal is from a decree of the Surrogate's Court of Westchester that refused probate of the alleged will of Richardson upon the findings of restraint and undue influence and of incompetency. Richardson was 72 years old when he executed the instrument. The natural objects of his bounty were his aged wife and his two daughters, Mrs. Alexander and Mrs. Valentine. At the instance of his wife and Mrs. Alexander, and after their consultation with his physician, Richardson had been confined in a sanitarium for physical and mental infirmities; but after a few weeks he had been released by legal proceedings at the instance of Mrs. Valentine, wherein a jury determined that he was competent to manage his affairs. Shortly thereafter he executed the instrument in question, whereby, although he provided for his wife and the child of Mrs. Alexander, he excluded Mrs. Alexander, and disposed of the bulk of his estate in favor of Mrs. Valentine and her children. The contestants are the widow and Mrs. Alexander.

The opinion in the case indicates that the finding of restraint and undue influence rests upon the distinction made in favor of Mrs. Valentine, for which there appeared no good reason, and the absence of any proof that Mrs. Valentine ever attempted to correct her father's ob-

session that Mrs. Alexander's purpose in taking steps towards his confinement in a sanitarium was to strip him of his possessions, by informing the father that Mrs. Alexander had acted from proper motives and upon a physician's advice. The question of incompetency was bitterly contested, and there was a clash of intelligent and reputable witnesses, aside from a battle of experts. The proponent called a well-known physician, who attended Richardson before the execution of the instrument, and who was a witness thereto, a prominent member of the bar who drew the instrument, as well as several friends and neighbors, of whom all gave evidence which indicated testamentary capacity. In sharp contradiction the contestants called several witnesses, including physicians.

We think that these issues should be passed upon by a jury. Such a determination of the appellate court does not necessarily proceed from the conclusion that the Surrogate's Court was positively wrong in the result reached upon the facts, but is the approved course where the disposition which should be made of the questions of fact presented by the evidence is not free from doubt, and the result reached in the Surrogate's Court is not entirely satisfactory to the appellate court. Matter of Tompkins, 69 App. Div. 474, 74 N. Y. Supp. 1002, and authorities cited; Matter of Warnock, 103 App. Div. 62, 92 N. Y. Supp. 643; Matter of Eckler, 126 App. Div. 199, 110 N. Y. Supp. 650; Matter of Hopkins, 176 N. Y. 595, 68 N. E. 1113. As this disposition is to submit, as if in the first instance, questions of fact to the primary judges thereof, and as it does not necessarily involve our determination of positive error in the findings of fact made by the learned Surrogate's Court, it seems wisest that we should not indulge in extended discussion of the facts in the present record. Matter of Tompkins, supra, citing Van Orman v. Van Orman, 11 N. Y. Supp. 931.

Aside from the fact that the instrument provides unequally in a marked degree for those of like degree, the finding of restraint and of undue influence, as I have said, rests upon the absence of evidence. For aught that appears, such evidence may be available. And, on the other hand, Mrs. Valentine testifies that at the outset she was against such confinement, and it may be that she believed that her sister's motives were not entirely disinterested, although that sister was sustained by the opinion of a physician. If Mrs. Valentine believed that Mrs. Alexander was moved solely by her affection for her father, and was fortified by medical opinion, Mrs. Valentine's omission to remove the violent prejudice of her father against her sister might be stamped as unsisterly, sinister, and unfair; but such shortcoming is hardly sufficient to compel the inference that Mrs. Valentine thereby substituted her will for that of her father in the disposition of his property.

In the nature of things, undue influence is not readily susceptible of direct proof; but there must at least be affirmative evidence of facts from which it may be inferred. Cudney v. Cudney, 68 N. Y. 143. In this case the court, per Rapallo, J., say:

"To invalidate a will on the ground of undue influence, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence. There must be evidence that he did ex-

ert it, and so control the actions of the testator, either by importunities which he could not resist, or by deception, fraud, or other improper means, that the instrument is not really the will of the testator."

The burden of this issue was upon the contestants. Matter of Will of Martin, 98 N. Y. 193, 197. So far as the question of competency is concerned, enough has been said to show that that issue should be submitted to a jury.

The decree of the Surrogate's Court should be reversed, and there should be had a new trial by jury at a trial term of the Supreme Court held in the county of Westchester upon these questions:

First. Did decedent, at the time of the execution of the will in question, have testamentary capacity?

Second. Was the instrument purporting to be such will voluntarily made by him?

Third. Was the execution by the decedent of the said instrument purporting to be his last will and testament procured by fraud, circumvention, or undue influence practiced upon him?

Costs of the appeal to abide the event of the new trial, payable out of the estate. All concur.