---

(86 Misc. Rep. 151)

## In re BURKE'S WILL.

(Surrogate's Court, Bronx County. June, 1914.)

1. WILLS (§ 1*)—POWER TO MAKE—CONTROL BY COURT.

Where testator has testamentary capacity and is free from undue influence, and complies with the statutory formalities, and makes no unlawful disposition, his plan of distribution cannot be interfered with, however unjust it may appear to the court.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. WILLS (§ 166*)—EXECUTION—UNDUE INFLUENCE—PROOF.

Where testator virtually disinherited his wife, so far as it was in his power to do so, the mere fact that certain relatives, one of whom received the bulk of his property under the will, had an opportunity to exercise undue influence did not authorize the finding that such influence was exercised; it being essential that undue influence be directly proved or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

established by circumstances such that a contrary inference cannot be drawn from them.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

Proceedings for the probate of the will of James J. Burke, deceased, contested by Josephine S. Burke. Will admitted, to probate.

Baker & Hyman, of New York City (Sol. A. Hyman, of New York City, of counsel), for proponent.

Foster & Cunningham, of New York City (Joseph J. Cunningham, of New York City, of counsel), for contestant.

Charles C. Marrin, of New York City, special guardian.

SCHULZ, S. The testator, James J. Burke, left him surviving his widow, Josephine S. Burke, and three daughters by a former marriage, also his father and mother. By his last will and testament which is the subject of this controversy, after bequests of $100 each to two of his daughters, he leaves to his widow the income derived from one-third of his real estate, which provision he states is made in lieu of her "dower rights." All the rest, residue, and remainder of his estate he gives, devises, and bequeaths to his remaining daughter, Marie Welsh, with the direction that she provide a home out of the proceeds for the benefit of his father and mother, and a statement that the said daughter shall "minister" to the wants of her two other sisters, should they "require medical attention or boarding and lodging." He then names the husband of his daughter Marie as executor of the will. It will thus be seen that the widow under the will receives only that which the law would give her if the decedent had made no provision for her in his will. She files an answer containing the objections and allegations usually to be found in such documents. The evidence that the legal formalities surrounding the execution of the will were complied with is not contradicted.

Two propositions seemed to be mainly relied upon by the contestant, viz., that the testator, at the time of the execution of the will, was not of sound and disposing mind and memory, and that his signature thereto was procured by fraud and undue influence practiced upon him.

I have considered this matter with a great deal of care, because the person who is disinherited was the wife of the decedent, who, so far as evidence discloses, was not lacking in her care of and devotion to the testator. It is very clear from the evidence that there is a very strong feeling of hostility between the widow and the blood relatives of her deceased husband, and there is some evidence to show that there was some difficulty between the widow and the decedent prior to his death. Whether that was due to fault on the part of the testator or on the part of his wife does not appear, and, so far as I can find, the evidence does not disclose any reason why the testator should have been angry with his wife.

[1] Under the law as laid down repeatedly, however, the province of this court is not to say what it would have done under the circumstances existing at the time of the making of the will. A man has the

right to make distribution in his will and testament as he thinks it should be made, not as the court thinks it ought to have been done. If he is of sound and disposing mind and memory and free from undue influence exercised upon him, and complies with the statutes as to the formalities to be observed upon execution, and makes no disposition which violates some provision of law, his plan of distribution cannot and should not be questioned or interfered with, however unjust it may appear to the court. Dobie v. Armstrong, 160 N. Y. 584, 593, 55 N. E. 302; Smith v. Keller, 205 N. Y. 39, 44, 98 N. E. 214; Cudney v. Cudney, 68 N. Y. 148, 152.

[2] In the case at bar, the testator, while he virtually disinherited his wife as far as it was in his power to do it, gave the bulk of his estate to his daughter, a daughter who had worked in his place of business with him, and who, it seems, was on good terms with him and had done much to assist him in carrying on his business. He coupled with this bequest and devise directions and provisions which indicated his desire to provide for the support, etc., of his remaining children and of his parents. The disposition of his estate cannot therefore be said to be unnatural. He did not will it to a stranger, but to one of his own blood, and the will, therefore, is not clouded with the suspicions which naturally arise where a man neglects all of those dependent upon his bounty and leaves his property to an absolute stranger, under whose care and control he is when the will is made. I believe that he was competent to make this will, and, under the law as laid down in many cases where the question of undue influence was under consideration, I am of the opinion that the evidence would not justify me in finding that this will was the result of such influence. It is true that this testator at the time he made this will, and some time before that, and thereafter, and up to the time of his death, was in the home of his blood relatives, and, from the evidence adverted to, they certainly appear to have been hostile to the widow, but I cannot from those facts alone find that there was undue influence used. The mere fact that these relatives, one of whom under the will received the bulk of the testator's property, may have had the opportunity to exercise undue influence upon the testator does not of itself justify a finding that it was exercised. Cudney v. Cudney, 68 N. Y. 148; Post v. Mason, 91 N. Y. 539, 43 Am. Rep. 689. Undue influence cannot be presumed; it must be the subject either of direct proof or established by circumstances of such a character that a contrary inference cannot be drawn from the same. Loder v. Whelpley, 111 N. Y. 239, 250, 18 N. E. 874; Matter of Richardson, 137 App. Div. 103, 122 N. Y. Supp. 83; Matter of Campbell, 136 N. Y. Supp. 1086, 1104. Such facts have not, in my opinion, been shown to exist in this case.

Holding the above views, and the will having been executed as provided by statute, it will be admitted to probate. Under the circumstances, costs will be allowed to the proponent and special guardian, but payable out of the funds of the estate.

Decreed accordingly.