(90 Misc. Rep. 230)

## In re SCHOBER'S WILL.

(Surrogate's Court, Bronx County. April, 1915.)

1. WILLS ⊜⇒252—PROBATE—JURISDICTION—NONRESIDENT.

Where the allegations of a petition for the probate of a will that decedent was a resident of and died in Pennsylvania possessed of certain debts owing him by a resident of the county of B. in New York are not controverted, they must, under the express provisions of Code Civ. Proc. § 2546, be accepted as true; and the Surrogate's Court of such county has jurisdiction, therefore, under section 2517, relative to the effect of the locality of debts on jurisdiction, to entertain the proceeding.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 587; Dec. Dig. ⊜⇒252.]

2. WILLS ⊜⇒70—TESTAMENTARY DISPOSITIONS—WHAT LAW GOVERNS—REALTY —PERSONALTY.

Under the express provisions of Decedent Estate Law (Consol. Laws, c. 13) § 47, the validity and effect of testamentary dispositions of realty situated in New York are regulated by the laws of New York, though decedent resided in Pennsylvania; but the validity and effect of testamentary dispositions of personalty located in New York are regulated by the laws of the state where decedent resided at the time of his death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 184–186; Dec. Dig. ⊜⇒70.]

3. WILLS ⊜⇒166, 436—EXECUTION—UNDUE INFLUENCE—PROOF.

Mere opportunity to exercise undue influence in connection with the execution of a will is not proof that such influence was exercised.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437, 947–950; Dec. Dig. ⊜⇒166, 436.]

4. WILLS ⊜⇒163—EXECUTION—UNDUE INFLUENCE—PRESUMPTION.

The exercise of undue influence, in connection with the execution of a will, will not be presumed, but must be shown, either by direct evidence, or by proof of circumstances reasonably leading to the conclusion that it was exercised.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig. ⊜⇒163.]

5. WILLS ⊜⇒155—EXECUTION—UNDUE INFLUENCE—WHAT CONSTITUTES.

The influence exerted by kindness to a testator, or by feelings on his part of gratitude or affection for the beneficiaries, or those alleged to have brought about the testamentary disposition, is not undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. ⊜⇒155.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. WILLS ☞52—PROBATE—TESTAMENTARY CAPACITY—BURDEN OF PROOF.
Under the express provisions of Code Civ. Proc. § 2614, the burden of proving the competency of a testator rests on the proponent in proceedings to probate a will.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. ☞52.]

7. WILLS ☞55—PROBATE—TESTAMENTARY CAPACITY—SUFFICIENCY OF EVIDENCE.
Evidence in proceedings to probate a will *held* to show that testator possessed testamentary capacity.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. ☞55.]

8. WILLS ☞82—TESTAMENTARY DISPOSITIONS—PROVINCE OF COURT.
Where testator observes the formalities of the law in the execution of his·will, and has sufficient mental capacity to execute same, and is free from undue influence, fraud, or restraint, the court must give his testamentary disposition effect, though it may believe that he did not pay due regard to the claims of kindred.
[Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. ☞82.]

9. WILLS ☞41—TESTAMENTARY CAPACITY.
That testator may have been eccentric, slovenly in dress,. and given to peculiarities of speech and manner, did not disqualify him from making a testamentary disposition of his property.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 84, 85; Dec. Dig. ☞41.]

10. EVIDENCE ☞571—EXPERTS—TESTAMENTARY CAPACITY—PROBATIVE EFFECT.
The testimony of expert·witnesses as to testator's mental condition several years prior to the execution of the will, and the probability of the continuance of such condition up to that date, is not entitled to more weight on the question of testamentary capacity than that of disinterested lay attesting witnesses, who testify to testator's mental capacity immediately prior to and at the time of the execution of the will.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2395–2398; Dec. Dig. ☞571.]

Proceeding upon the probate of the will of George R. Schober, deceased. Probate granted.

Wm. Winchester Hall, of Pittston, Pa., for petitioner.
Adolph & Henry Bloch, of New York City, for contestant.

SCHULZ, S. [1] The petition states that the decedent was a resident of and died in the state of Pennsylvania possessed of certain personal property, to wit, debts owing to him by a resident of the county of Bronx and state of New York. These allegations, not being controverted, must be accepted as true (Code Civ. Proc. § 2546), and this court therefore has jurisdiction to entertain this proceeding (Code Civ. Proc. § 2517). The decedent also died seised of real estate situated in the·state of New York. The disputed document is alleged to have been ‾executed on the 5th day of June, 1914, and the decedent died on June 13, 1914. By its terms the residue of the estate remaining after the payment of his debts and funeral expenses is devised and bequeathed to a sister of the decedent, if she be living at the time of

his decease, and in the event of her death during his life the same is devised and bequeathed to a niece of the decedent.

[2] As the alleged will contains testamentary dispositions of real property, the validity and effect of such testamentary dispositions are regulated by the laws of this state, without regard to the residence of the decedent; and as it also contains testamentary dispositions of personalty, the validity and effect of said testamentary dispositions are regulated by the laws of the state of Pennsylvania, where the decedent was a resident at the time of his death. Decedent Estate Law, § 47 (Laws 1909, c. 18, constituting Consol. Laws, c. 13) § 47. It therefore becomes necessary in deciding the matter to consider, not only the laws of our own state, but also those of the state of the decedent's residence.

From the petition it would appear that the decedent left him surviving a widow, two sisters, two nieces, and a nephew. The widow filed objections in the usual form, but containing, in addition, an allegation that the heirs at law and next of kin, as set forth in the petition, are not the heirs at law and next of kin of the decedent, but that a person therein named and the widow are such heirs at law and next of kin, and that the said person thus named should be made a party. The latter was thereupon brought into the proceeding by a supplemental citation issued to her. She thereafter appeared by counsel, and upon the hearing it was contended that she was a daughter of the decedent, being the issue of the marriage between him and his surviving widow. All of the parties are therefore before the court. The situation presented, regarding it from the standpoint of the contestant, is that of a testator who, by his alleged last will and testament, makes no provision for his wife and child.

I am satisfied from the evidence produced before me that the legal formalities of execution prescribed by the statutes of the state of New York and of the state of Pennsylvania, in which latter state the document is alleged to have been executed, were complied with. Decedent Estate Law, supra, § 21; Purdon's Digest (13th Ed.) tit. "Wills."

[3-5] The objection to the effect that the subscription and publication of the disputed document was procured by fraud or undue influence is not sustained by the evidence. Mere opportunity to exercise undue influence does not of itself justify a conclusion that it was exercised. Cudney v. Cudney, 68 N. Y. 148; Post v. Mason, 91 N. Y. 539, 43 Am. Rep. 689; Logan's Estate, 195 Pa. 282, 45 Atl. 729; McNitt's Estate, 229 Pa. 71, 78 Atl. 32, citing Tyson's Estate, 223 Pa. 596, 72 Atl. 1065. It cannot be presumed, but must be shown to have existed, either by direct evidence, which from its nature is not often possible, or by circumstances of such a character as to reasonably lead to the conclusion that it was present. Loder v. Whelpley, 111 N. Y. 239, 18 N. E. 874; Rollwagen v. Rollwagen, 63 N. Y. 504; Matter of Richardson, 137 App. Div. 103, 122 N. Y. Supp. 83; Caughey v. Bridenbaugh, 208 Pa. 414, 57 Atl. 821; Phillip's Estate, 244 Pa. 44, 90 Atl. 457; Matter of Campbell, 136 N. Y. Supp. 1086, 1104. The influence exerted by kindness to the testator, or by feel-

ings, on his part, of gratitude to or affection for the beneficiaries, or those alleged to have brought about the testamentary disposition, is not undue influence. Children's Aid Society v. Loveridge, 70 N. Y. 387; Marx v. McGlynn, 88 N. Y. 358; Matter of Mondorf, 110 N. Y. 450, 18 N. E. 256; Englert v. Englert, 198 Pa. 326, 47 Atl. 940, 82 Am. St. Rep. 808; Robinson v. Robinson, 203 Pa. 400, 53 Atl. 253; Caughey v. Bridenbaugh, supra. '

It imports coercion. Matter of Van Ness, 78 Misc. Rep. 592, 139 N. Y. Supp. 485, and cases cited. It is "an affirmative assault on the validity of a will, and the burden of proof does not shift, but remains on the party who asserts its existence." Matter of Kindberg, 207 N. Y. 220, 229, 100 N. E. 789, and cases cited. While I have been unable to find a decision of the highest court of appellate jurisdiction in the state of Pennsylvania which lays down a rule as definite and broad as that enunciated in Matter of Kindberg, I believe that the general trend of decisions in that state justifies the conclusion that, under the facts and circumstances surrounding the execution of the disputed document in this case, the burden of proving undue influence was upon the contestant. Douglass Estate, 162 Pa. 567, 29 Atl. 715; Messner v. Elliott, 184 Pa. 41, 39 Atl. 46. No evidence tending to sustain this particular objection was introduced by the contestant, so that the weight of evidence upon this proposition was clearly with the proponent.

[6] There remains for consideration, then, only the question whether the alleged testator had testamentary capacity when he signed the document and published and declared it as required by law. The burden of proving the competency of the alleged testator in this state rests upon the proponent. Code Civ. Proc. § 2614; Decedent Estate Law, supra, §§ 10, 15; Matter of Goodwin, 95 App. Div. 183, 88 N. Y. Supp. 734; Matter of Schreiber, 112 App. Div. 495, 98 N. Y. Supp. 483; Matter of Lissauer, 5 N. Y. Supp. 260; Matter of Gedney, 142 N. Y. Supp. 157; Rollwagen v. Rollwagen, 63 N. Y. 504; Matter of Cottrell, 95 N. Y. 329, *336; Matter of Martin, 98 N. Y. 193, 196. This being the most burdensome rule of law that can be imposed upon the proponent on the issue of testamentary capacity, it is unnecessary to discuss the law of Pennsylvania on this subject, unless the conclusion is arrived at that the proponent has failed to sustain the burden, required by the laws of this state.

[7] The fact that the testator failed to provide for his wife and child might lay the instrument open to the criticism that it is unnatural in its terms, but in my opinion the fact that such provision was not made does not of necessity lead to this conclusion. The testimony shows that the decedent left his wife, under circumstances to which reference will hereafter be made, on the 17th of July, 1911, and journeyed from Stony Brook, where they were then residing, to the city of Philadelphia, where he took up his abode with one of his sisters; that he remained there for a period of about ten months to one year, and then went to live with his other sister, the alleged beneficiary, with whom he resided up to the time of his death. At the time that he left his wife he had quarreled with her, and never saw her again,

to .confer with her, so far as the evidence discloses, up to the time of his death. After the separation a settlement was made by which the property they held either ·jointly or severally was divided between them. That the estrangement between husband and wife took place because of fault on his part, as testified to by the contestant, is not material to the issue. The conceded facts are that there was such an estrangement, and a subsequent division of the property of husband and wife, and whatever may have been the cause thereof, this furnishes an explanation and a reason for the failure of the decedent to make a provision in favor of his wife.

It further appears that the daughter who survived him was not brought up by him and his wife, but spent her childhood and a part of her youth with a family in Philadelphia, by whose family name she was known and, so far as she could recollect, had never seen her father until she was 27 years of age. She also states that she first remembers seeing her mother when she (the daughter) was 18 years old, and never saw her again until she was 27 years of age. In the years 1903 and 1904 she resided with her father and mother at Stony Brook, but with the exception of that period, seems not to have lived with either of them. During the time that she resided with her parents, as stated, it would appear from letters in evidence and from other testimony that the relations existing between her and the decedent were most pleasant. It is difficult, however, to assume that under the circumstances above detailed there existed between her and her parents that intimate personal relationship and dependence which a closer association between them during her childhood and youth would have tended to foster. She is not to be blamed for this; on the contrary, she merits sympathy, and yet it weakens the charge that the document which contains no provisions for her is unnatural in its terms.

[8] It is not for the surrogate to speculate why no provision for her was made, nor to declare the instrument invalid as the will of the decedent, because the court may think that the decedent did not pay due regard to the claims of kindred. He was disposing of his property, and had a right to dispose of it as it pleased him, and so long as he observed the formalities of execution required by law, was of sufficient mental capacity to do so, and free from undue influence, fraud, and restraint, his wishes must be respected and his testamentary disposition given effect. Dobie v. Armstrong, 160 N. Y. 584, 593, 55 N. E. 302; Smith v. Keller, 205 N. Y. 39, 98 N. E. 214; Cudney v. Cudney, 68 N. Y. 148; Logan's Estate, 195 Pa. 282, 45 Atl. 729; Morgan's Estate, 219 Pa. 355, 68 Atl. 953. During the last years of his life he was very fond of the niece mentioned in the propounded document and lived with the aged sister who is the beneficiary in the alleged will. Considering all of the facts to which reference has thus been briefly made, it does not appear to me that the alleged disposition which he made of his property was under the circumstances such an unusual and unnatural testamentary disposition as to arouse a suspicion that the testator was not of sound mind.

The testimony of the two subscribing witnesses would tend to show

that the testator at the time of the execution of the will was of sound mind, memory and understanding. This appears clearly from the testimony of the attorney who attended at the execution of the will. He says that he was instructed to draw a will of the decedent, and given the terms thereof, by the husband of the niece named in the propounded document; that he prepared the instrument as instructed by him and then called upon the decedent, but, before showing it to him, asked him to state the terms of the will which he wished to execute, and the same were then detailed to him, and were as the niece's husband had stated them to be; that this document, however, contained no provision for the niece at all; and that at the time of its execution the decedent stated that he wished a change made, namely, to have the name of the niece inserted as a beneficiary, to take in the event of the death of his sister, during the decedent's life. It will be observed that the terms of the will, as stated to the draftsman by the husband of the aforesaid niece contained no provision for the latter's benefit. The attorney thereupon permitted the alleged testator to execute the instrument which he had drawn, but stated that he would redraw the same and insert the name of the niece at his request, and that thereafter he did so, and that the latter document was executed and is the one now before the court for consideration. Without detailing his testimony further, it is to the effect that the testator, at the time of the execution of the first document and of the document now propounded for probate, was fully conversant with his affairs and competent to execute a last will and testament under the laws of the state of New York and of Pennsylvania. The testimony of the other subscribing witness is also to the effect that the testator was fully competent at the time of the execution of the instrument in question.

[9] A number of witnesses were produced by the contestant, some of whom testified to acts and conversations of the decedent which they say impressed them as being irrational. None of the incidents which they narrate were at or near the date of the execution of the will and they are of such a character as to be as compatible with rationality as with irrationality. Other witnesses also called by the contestant give testimony which tends to show that the decedent, at the times they saw him, was rational. I do not consider the testimony tending to show irrationality, and above referred to, of great weight as against the testimony of the subscribing witnesses showing his condition upon the day when the document was executed. The fact that the decedent may have been eccentric, slovenly in dress and given to peculiarities of speech and manner are not sufficient to disqualify him from making a testamentary disposition of his property. Hartwell v. McMaster, 4 Redf. 389; Matter of Murphy, 41 App. Div. 153, 58 N. Y. Supp. 450; Schouler, Wills & Adm. § 149; Morgan's Estate, 219 Pa. 355, 68 Atl. 953.

[10] There were two physicians called by the contestant, however, whose testimony merits more careful consideration. It appears that these two witnesses, in the year 1911, were commissioners in lunacy; and in June or July of that year attended at the home of the decedent and examined him as to his mental condition. Upon the first of such

examinations one of them testified that he refused to sign a lunacy complaint because he thought that the decedent might be taken care of without being committed. About two weeks later another examination was had, at which the two physicians who testified were accompanied by a third physician. The conclusion arrived at by the witnesses was that the decedent was then suffering from progressive incurable delusional insanity. Some evidence given by them and by the contestant tended to show that steps were taken to have the decedent committed to an insane asylum, but neither an adjudication of insanity nor an order of commitment has been offered in evidence. One of the physicians on cross-examination testified that it was barely possible that the decedent could have had lucid intervals, and also that it was barely possible for him to recover from his ailment sufficiently to attend to his affairs.

The testimony of these physicians as to the condition of the decedent in June or July, 1911, is not conclusive as to his condition in June, 1914, when the document under consideration is alleged to have been executed (Matter of Kiedaisch, 12 N. Y. Supp. 255, 260; McNitt's Estate, 229 Pa. 71, 78 Atl. 32), and I consider the testimony of the subscribing witnesses of greater weight. Even if there had been an adjudication of insanity and an order for a commitment in the year 1911, still I believe that under the authorities these facts would only have been prima facie evidence of incompetency and could be rebutted by proof of the execution of the disputed document during a lucid interval. Wadsworth v. Sharpsteen, 8 N. Y. 388, 399, 59 Am. Dec. 499; Jarman, Wills (6th Ed.) *37; Lewis v. Jones, 50 Barb. 645; Matter of Coe, 47 App. Div. 177, 62 N. Y. Supp. 376; Harden v. Hays, 9 Pa. 151; Titlow v. Titlow, 54 Pa. 216, 93 Am. Dec. 691; Schouler, Wills & Adm. § 81.

After the second visit of two of the physicians, it appears that the contestant advised the decedent that some one was coming to take him to an asylum, and her testimony is that, notwithstanding the fact that the physicians had arrived at the conclusion that the decedent was insane, she nevertheless gave him $30, so that he could leave before he was taken away. Eight or nine months after the time the objectant claims to have ascertained that this decedent was insane, she accepted the fruits of a settlement made on her behalf with this alleged lunatic, whereby she received a deed from him of his share of some real estate and an assignment of his interest in a mortgage, and assigned to him her interest in two mortgages. It is difficult to reconcile such action with a belief on her part that at that time the decedent whose deed and assignment she accepted was insane.

The evidence shows that, between the time when he left his wife in 1911 and the time of his death in 1914, he made frequent trips from Philadelphia to New York, sometimes alone, sometimes in company with the niece mentioned in his will, and some of the witnesses for the contestant who saw him in New York when he was on one of his trips to the city in the year 1913 had no criticism to make of his conversation and demeanor, except that he appeared to have been drinking and was nervous.

Upon all of the evidence in this proceeding I am of the opinion that the proponent has fairly sustained the burden which is upon him on the issue of testamentary capacity. I accordingly conclude that the propounded document is the last will and testament of the decedent duly executed as provided by the laws of Pennsylvania and of this state, that its execution was not procured by fraud or undue influence, and that the decedent at the time of execution was of sound and disposing mind and memory, free from restraint and capable of executing a will valid to pass real and personal property.

The document will therefore be admitted to probate.

Probate granted.