Foster, J.
The order appealed from is an order of the Surrogate’s Court of Tompkins County which granted in part and denied in part motions to dismiss a petition for an order vacating a probate decree. The decree sought to he vacated was made September 15, 1924, after an uncontested probate proceeding, and determined that certain papers in the handwriting of Richard M. Schell, deceased, purporting, to be his last will and testament, constituted a valid will. The petition to vacate this decree is based upon charges of fraud made against a corporate executor and trustee, and alleges that decedent was not a resident of Tompkins County at the time of his death, and that the Surrogate’s Court of that county had no jurisdiction to probate his alleged will; also, that the instrument probated was not a valid will, executed in conformity with the statute. The motions to dismiss the petition were made on the grounds that the petition did not state facts sufficient to justify the relief asked; that petitioner is barred from such relief by the Statute of Limitations and by reason of laches, and that there has been a judicial determination of all the matters set forth in the petition in a proceeding to which petitioner was a party. In passing upon the sufficiency of the petition the Surrogate held that petitioner was bound by the probate determination as to tfie residence of the decedent, but denied in all other respects the motion to dismiss. All parties have appealed from his order.
Decedent died at Freeville, Tompkins County, New York,, on July 28, 1924. He was survived by his sister, Alice Schell Porcher, the petitioner in this proceeding, who was his only heir at law and next of kin. On August 7, 1924, the Bank of New York and Trust Company (now the Bank of New York) filed in the Surrogate’s Court of Tompkins County a verified petition for the probate of an instrument alleged to be decedent’s will. The petition stated that decedent was a resident of Tompkins County at the time of his death. A citation was issued and served on petitioner. She did not appear in the proceeding, and on September 15, 1924, a decree of probate was entered.
The will in question is conceded to be in the handwriting of decedent except the signatures of the witnesses and their addresses. It was written on four double sheets of personal *213 note paper, folded into book form and fastened by two brass staples. The pages of the first three sheets were numbered; the pages of the fourth or last sheet were not. According to the date written above the signature of decedent, and the date appearing in the attestation clause, the will was executed on the 9th of March, 1921. It provided for a number of specific bequests and set up several trusts, the complete details of which are not material here. The New York Life Insurance and Trust Company was named as executor and trustee. Prior to the death of decedent this company was merged with The Bank of New York and became the Bank of New York and Trust Company. Letters testamentary were issued to that corporation on the 15th day of September, 1924, and it commenced to administer the estate. In November, 1925, it accounted for its acts as executor and all persons interested in the estate were cited in that proceeding.
As trustee the same bank administered the testamentary trusts created by the will until 1938, and thereafter as the Bank of New York, its present name, up to the present time. In 1931, it had an intermediate accounting and asked for a construction of certain provisions of the will. A decree in that proceeding was entered July 17, 1931, which construed the will and approved the trustee’s accounts of each trust for a period ending December 8, 1930.
Some time in 1943, according to the representatives of the trustee bank, a question arose as to whether the rule that a corporate' trustee should not hold its own stock was applicable to the trusts which decedent had created, and for the first time the possibility was noted that the testator might have rewritten a part of his will after the same had been executed on March 9, 1921. In the twentieth paragraph of the will the. decedent devised stock of the “ Bank of N. Y. & Trust Co.”. This corporation did not come into existence until September 21, 1922, when the New York Life Insurance and Trust Company merged with the Bank of New York, over a year and a half after the will was executed. Elsewhere in the will, notably in the third paragraph and in the paragraph naming an executor and trustee, the New York Life Insurance and Trust Company is referred to. It may also be noted that in the twentieth paragraph of the will reference is made to stock of “ Bannister & Schell Incorporated ”, whereas this corporation apparently was not created until April 14, 1922, over a year after the will was executed.
*214 Some time in 1944 representatives of the trustee communicated with the then Surrogate of Tompkins County, first orally and then in writing, as to the possibility that testator- had rewritten a part of his will after the same had been executed. Thereafter a citation was issued, directed to all interested parties to show cause why, among other things, the sufficiency of the proof of probate should not be determined. Upon receipt of this citation petitioner then filed a petition, followed by an amended petition and answer, and subsequently by an amended and supplemental petition which asked that the decree of probate be declared null and void, and for other incidental relief.
The court below held that petitioner could not now challenge the jurisdiction of the Surrogate’s Court of Tompkins County on the issue of decedent’s residence. We think this determination was correct. The petition for probate, filed in 1924, recited that decedent was a resident of Tompkins County, and the citation served on petitioner contained the same recital. Thus the jurisdictional fact was alleged, presented to an interested party and was not questioned by her. Finally, the decree recited the filing of an instrument purporting to be the last will and testament of Richard Montgomery Schell, “ late of the town of Dryden in the’ County of Tompkins ”. The jurisdictional requirements of the Surrogate’s Court Act were complied with and there was due proof of residence (§§ 51, 53, 76). By her failure to appear or answer petitioner conceded the allegations in the petition for probate to be true (Matter of Schober, 90 Misc. 230; Matter of Gates, 117 Misc. 800; Matter of Freundlich, 58 N. Y. S. 2d. 679 [not officially published]). The Surrogate necessarily had to determine that Tompkins County was the residence of decedent before the will could be probated there, and his determination cannot now be successfully attacked under the circumstances (Bumstead v. Read, 31 Barb. 661; Bolton v. Schriever, 135 N. Y. 65; Matter of Daniels, 140 Misc. 89).
Moreover, so far as this issue is concerned, petitioner had been guilty of gross laches. Of all persons she was in the best position to know the true residence of decedent, in fact she does not disclaim such knowledge but merely alleges that she was fraudulently induced to believe that Tompkins County was the proper county for probate because her brother died there. However, the citation served on her recited that county as his residence. Despite this she failed to appear and assert *215 what she claims to have been his true residence, and chose to remain silent for twenty years, in the meantime accepting benefits under the will. No answer or further proof is required to characterize such conduct as laches which operates as an estoppel against petitioner (Matter of Richardson, 81 Hun 425; Matter of Sielcken, 162 Misc. 54). It appears on the face of her application.
As to the other phase of the petition dealing with the alleged invalidity of the will, which the court below refused to dismiss, we think a different situation exists. The possibility that the testator rewrote a portion of his will after the same had been executed rests almost entirely upon references in the will to corporations not in existence at the time the will was signed. Petitioner cannot be justly charged with laches as a matter of law for not discovering this sooner, especially when the representatives of the corporate executor and trustee say that they did not make the discovery until nineteen years after the probate of the will. It can hardy be supposed that she had any knowledge as to when the corporations involved were created until such information was directly called to her attention. Laches, therefore, on this phase of the proceeding cannot be presumed.
Petitioner charges in her petition that the corporate executor and trustee named in the will knew that the papers filed for probate had been changed and altered after the execution thereof; that it concealed this knowledge from her and represented to her that the papers so filed constituted a valid will; and that by reason thereof she did not appear in opposition to the probate proceedings. These are allegations of fact, not conclusions of law, and if true would constitute fraud. Whether they are true can only be ascertained after proof is taken. Undoubtedly the Surrogate had power to entertain petitioner’s application to vacate the probate decree, and may take proof with reference thereto for the purpose of ascertaining whether the instrument probated was a valid will in whole or in part; and if invalid whether its probate was procured by fraud or the result of innocent error; and to determine also whether petitioner ’s conduct under all the circumstances amounted to laches sufficient to bar her from relief she might otherwise, obtain (Surrogate’s Ct. Act, § 20, subd. 6). The exercise of a surrogate’s power to vacate a decree for any of the grounds assigned in the section cited is not subject to any statutory limitation (Matter of Flynn, 136 N. Y. 287; Matter of *216 Henderson,. 157 N. Y. 423). But he may of course refuse to exercise such power if laches exists to such an extent that to vacate a decree would be inequitable and unjust.
The order appealed from should be affirmed in all respects, without costs. •
Hill, P. J., Heffernan, Brewster and Russell, JJ., concur.
Order in all respects affirmed, without costs. [See post, p. 1081.]